## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

NOVARTIS AG and GENETECH, INC.,

    Plaintiffs,

      v.

SHARx, LLC and CAMPBELL HEIGHTS PHARMACY LTD,

    Defendants.

Case No. 4:26-cv-10371

Hon. Shalina D. Kumar

**PLAINTIFFS NOVARTIS AG AND GENETECH, INC.'S OPPOSITION TO DEFENDANT CAMPBELL HEIGHTS PHARMACY LTD.'S MOTION TO DISMISS COMPLAINT AND CROSS-MOTION FOR JURISDICTIONAL DISCOVERY**

Thomas W. Cranmer (P25252)
Matthew P. Allen (P57914)
Miller, Canfield, Paddock and Stone, PLC
840 W. Long Lake Rd., Ste. 150
Troy, MI 48098
(248) 267-3290
cranmer@millercanfield.com
allen@millercanfield.com

*Attorneys for Plaintiffs Novartis AG and Genentech, Inc.*

Michael X. Imbroscio
Robert N. Hunziker
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
mimbroscio@cov.com
rhunziker@cov.com

Khala James
Covington & Burling LLP
Salesforce Tower
415 Mission Street
Suite 5400
San Francisco, CA 94105
(415) 591-6000
kjames@cov.com

*Attorneys for Plaintiff Genentech, Inc.*

Anna Kurian Shaw
Carrie DeLone
Lauren Cury
Hadley Dreibelbis
Hogan Lovells US LLP
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5710
anna.shaw@hoganlovells.com
carrie.delone@hoganlovells.com
lauren.cury@hoganlovells.com
hadley.dreibelbis@hoganlovells.com

*Attorneys for Plaintiff Novartis AG*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 2

    A.    Plaintiffs' Xolair® Medicine ...................................................... 2

    B.    Defendant Campbell Heights Pharmacy Ltd.'s Unlawful Importation Scheme ...................................................................... 4

    C.    Defendant's Contacts in the Forum State ................................. 5

ARGUMENT ......................................................................................................... 7

    I.    The Court has Personal Jurisdiction over Campbell ........................... 7

    A.    Plaintiffs Have Presented a Prima Facie Case that Michigan's Long-Arm Statute Authorizes Limited Personal Jurisdiction over Defendant ........................................ 8

    B.    Due Process Will Not Be Violated by Michigan's Exercise of Limited Personal Jurisdiction over Campbell ........................ 9

        1.    Defendant Has Purposefully Availed Itself of the Privilege of Conducting Activities within Michigan ........................................................................ 10

        2.    This Action Arises Out of or Relates to the Medicine Shipment Activities that Defendant Has Directed at Michigan .............................................. 15

        3.    The Exercise of Jurisdiction over Defendant Comports with Fair Play and Substantial Justice ......................................................................... 16

    II.    In the Alternative, the Court Should Grant Plaintiffs' Cross-Motion for Jurisdictional Discovery ................................................. 18

CONCLUSION ..................................................................................................... 22

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AMB Media, LLC v. OneMB, LLC*,
  No. 23-5607, 2024 WL 2052151 (6th Cir. May 8, 2024) ............................15, 16

*Audi AG and Volkswagen of Am., Inc. v. D'Amato*,
  341 F.Supp.2d 734 ........................................................................................16

*Bird v. Parsons*,
  289 F.3d 865 (6th Cir. 2022) ........................................................................15, 17

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*,
  582 U.S. 255 (2017)........................................................................................7

*Chittenden Tr. Co. v. F. LaChance d/b/a Pharmacie Iberville*,
  464 F.Supp. 446 (D. Vt. 1978) ......................................................................14

*CompuServe, Inc. v. Patterson*,
  89 F.3d 1257 (6th Cir. 1996) .........................................................................16

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
  141 S. Ct. 1017 (2021)....................................................................................15

*In re Impact Absorbent Techs., Inc.*,
  106 F.3d 400 (6th Cir. 1996) .........................................................................13

*K&B Capital, LLC v. RDK Truck Sales and Servs., Inc.*,
  No. Civ. A. 5:05CV-17-R, 2005 WL 1568176 (W.D. Ky. June 28,
  2005) ..............................................................................................................13

*Kerry Steel, Inc. v. Paragon Indus., Inc.*,
  106 F.3d 147 (1997)........................................................................................13

*Lanier v. Am. Bd. of Endodontics*,
  843 F.2d 901 (6th Cir. 1988) .........................................................................8, 9

*Lazzaro v. Charlevoix Lakes*,
  108 Mich.App. 120, 310 N.W.2d 295 (1981)................................................8

*Malone v. Stanley Black & Decker, Inc.*,
965 F.3d 499 (6th Cir. 2020) ...........................................................................15, 19

*Murtech Energy Servs., LLC v. ComEnCo Sys., Inc.*,
No. 2:13-CV-12721, 2014 WL 2863745 (E.D. Mich. June 24,
2014) ...................................................................................................................18

*Neogen Corp. v. Neo Gen Screening, Inc.*,
282 F.3d 883 (6th Cir. 2002) ........................................................................10, 13

*Powervip, Inc. v. Static Control Components, Inc.*,
No. 1:08-CV-382, 2009 WL 152106 (W.D. Mich. Jan. 21, 2009).....................18

*Reynolds v. Int'l Amateur Athletic Fed'n*,
23 F.3d 1110 (6th Cir. 1994) ...............................................................................7

*S. Mach. Co. v. Mohasco Indus., Inc.*,
401 F.2d 374 (6th Cir. 1968) .............................................................................10

*Sifers v. Horen*,
385 Mich. 195, 188 N.W.2d 623 (1971)...............................................................8

*Theunissen v. Matthews*,
935 F.2d 1454 (6th Cir. 1991) ...........................................................................18

*In re Trade Partners, Inc., Inv'r Litig.*,
532 F.Supp.2d 904 (W.D. Mich. 2007) ..............................................................11

*Williams Intl. Co., LLC v. Zurich Am. Ins. Co.*,
No. 2:20-cv-13277, 2021 WL 1056844 (E.D. Mich. Mar. 19, 2021) ................18

**Statutes**

Fed. R. 12(b)(2)....................................................................................................10

Mich. Comp. Laws § 600.715...............................................................................8, 9

Mich. Comp. Laws § 600.715(1) ...........................................................................8

Mich. Comp. Laws § 600.715(2) ...........................................................................8

U.S. Const. amend. XIV .......................................................................................7

## ISSUES PRESENTED

Is Defendant Campbell Heights Pharmacy Ltd.'s prescription fulfillment and shipping of Xolair® medicine into the forum state sufficient to confer personal jurisdiction?

# CONTROLLING OR MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 12(b)(2)

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255 (2017)

*AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151 (6th Cir. May 8, 2024)

*Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901 (6th Cir. 1988)

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883 (6th Cir. 2002)

## PRELIMINARY STATEMENT

Defendant Campbell Heights Pharmacy Ltd. ("**Defendant**" or "**Campbell**") is a Canadian pharmacy that fills and distributes prescriptions globally, including to the United States.  In 2024 and 2025, Defendant filled at least three prescriptions for U.S. patients located in Michigan for Xolair® medicine approved for sale in the United States, which is offered by Plaintiffs Novartis AG and Genentech, Inc. (collectively, "**Plaintiffs**").  However, the medicine dispensed by Campbell was not the U.S. regulated and FDA-approved version of Xolair® medicine (the "**U.S. Xolair® medicine**"), but instead, a product appearing to be a version of the Xolair® medicine intended for sale in Canada ("**Canadian Xolair® medicine**").  The Canadian Xolair® medicine contains numerous significant physical differences, including packaging, labeling, Medication Guides and other patient-directed information, and lacks the same quality control measures employed by Plaintiffs for the U.S. Xolair® medicine, such as strict shipping and temperature protocols and recall protocols.  By distributing this materially different Xolair® product in the United States, and in Michigan specifically, Defendant put Michigan residents' health and safety at risk, confused medical practitioners in the state, and infringed Plaintiffs' trademark rights.

Defendant itself admits in its motion to dismiss ("**Motion**") that it (1) filled prescriptions for U.S. Xolair® medicine requested by Michigan residents with

1

Canadian Xolair® medicine, (2) affixed labels bearing Defendant's name and contact information to the medicine packaging, (3) included a packing slip with the medicine that represented that "These medications are prescribed by the following Doctor(s): SEE ATTACHED RX" and then attached prescriptions issued from doctors located in Michigan, and (4) used a common carrier to deliver the medicine to patients in Michigan.  ECF No. 21.  Despite these transactions, Defendant asks the Court to dismiss it from this case on personal jurisdiction grounds, claiming that these transactions were patient-initiated, that Defendant's role was limited to merely handing off the medicine for shipment, and that the transactions themselves were too "isolated" to create contacts with Michigan as a forum state.  However, Defendant's own admissions belie these arguments.

Therefore, for the reasons that follow, the Court should deny Defendant's motion to dismiss and exercise personal jurisdiction over Defendant.  In the event that the Court determines that it cannot decide the applicable jurisdictional questions on the record before it, the Court should, in the alternative, grant Plaintiffs' cross-motion for jurisdictional discovery.

<u>**STATEMENT OF FACTS**</u>

**A.      Plaintiffs' Xolair® Medicine**

Plaintiffs develop and co-promote a medicine called Xolair®, intended to treat patients with severe, persistent allergic asthma, food allergies, and similar

2

respiratory conditions, and which is protected by several federal trademark registrations for XOLAIR.  ECF No. 1, PageID.1 & 8, ¶¶ 1, 32 (listing the XOLAIR Marks).  The U.S. Xolair® medicine is under strict quality control measures that ensure the safety and efficacy of the medicine, in accordance with its FDA-approved U.S. New Drug Application ("**NDA**").  *Id.* PageID.13, ¶ 46.  For example, Genentech has strict shipping and temperature protocols in place, so that the U.S. Xolair® medicine remains at all times at a controlled ambient temperature as required by the FDA.  *Id.* PageID.14, ¶¶ 49-50.  The FDA also enforces highly specific packaging and labeling requirements for U.S. medicines, including inserts with prescribing information, common adverse reactions, or limitations of use, and a Medication Guide.  *Id.* PageID.19-20, ¶¶ 70, 74.  These requirements are visible on the packaging for U.S. Xolair® medicine, including, importantly, the warning: "**Do not** use for emergency treatment." *Id.* PageID.20, ¶ 71 (emphasis added).

By contrast, Xolair® medicine sourced from other jurisdictions may not retain the same quality control standards, and otherwise does not convey the same warnings and protections required under U.S. regulations. *Id.* PageID.12, ¶ 43. The Canadian Xolair® medicine differs in several respects from the U.S. Xolair® medicine – it does not include warnings against emergency treatment, an FDA-approved Medication Guide, or other pertinent prescribing information, among other material physical differences. *Id.* PageID.19-20, ¶ 70.  And when sold and shipped

3

outside of Canada into the United States, Plaintiffs cannot guarantee that established quality control procedures have been followed, nor can Plaintiffs follow proper product recall protocols should any safety or quality issues arise. *Id.* PageID.16, ¶ 60.

**B. Defendant Campbell Heights Pharmacy Ltd.'s Unlawful Importation Scheme**

At issue in this suit is Defendants' scheme to unlawfully import the Canadian Xolair® medicine into the United States. At least three times in 2024 and 2025, health care provider Allergy & Asthma Associates of Michigan received a prescription request form from "SHARx Mail Order Program," which instructed the practice to send an e-prescription for U.S. Xolair® medicine to a U.S. pharmacy named "University Pharmacy" in Coral Gables, Florida. *Id.* PageID.6, 29, ¶¶ 23, 87. After electronically submitting this prescription, the Michigan practice received a delivery on behalf of its patients which contained Canadian Xolair® medicine, rather than the prescribed U.S. Xolair® medicine, originating from Campbell in British Columbia, Canada (and not, as the provider was led to believe, University Pharmacy in Florida). *Id.* PageID.30-31, ¶¶ 89, 95. Upon realizing that they had received the differing Canadian Xolair® medicine, the health care employees expressed confusion and contacted SHARx, who confirmed that Campbell is a "specialty pharmacy" from which SHARx is sourcing medicine. *Id.* PageID.33, ¶ 105.

### C.    Defendant's Contacts in the Forum State

In both Plaintiff's Complaint and Campbell's Motion, the parties do not dispute the following jurisdictional facts:

- Campbell received prescriptions for Xolair® which were written by Michigan doctors in 2024 and 2025.  ECF No. 1, PageID.29, ¶ 87; ECF No. 21, PageID.136.

- Those prescriptions prepared by Allergy & Asthma Associates of Michigan listed both a clinical address and a patient address, which each indicated locations in Michigan.  *See* ECF No. 21-2, PageID.157-66.

- Campbell filled each of these prescriptions in Canada, by dispensing the Canadian Xolair® medicine rather than the U.S. Xolair® medicine.  *Id.* PageID.156.

- Campbell affixed its own label to the medicine, which appeared as follows:



ECF No. 1, PageID.31, 44, ¶¶ 95, 147; ECF No. 21-2, PageID.157.

- Campbell enclosed a packing slip in the Xolair® shipment, which included the patient's billing and shipping information identifying a Michigan address and represented that those medications were being prescribed pursuant to prescriptions issued by doctors in Michigan.  ECF No. 21-2, PageID.157-66.

- Campbell's packing slip also included a "Patient Customs Statement" that stated, "I hereby acknowledge, confirm, and certify that I am importing the enclosed medications to the US . . .",[1] making it clear that Campbell was aware the medications were being shipped outside of Canada.  *Id.*

- Once the Canadian Xolair® medicine was dispensed by Campbell, Campbell provided it to a common carrier for shipment to Michigan.  ECF No. 21-2, PageID.157.

Additionally, Plaintiffs understand from their preliminary investigation that Campbell may have contracted with the common carrier Reship to ship the Canadian Xolair® medicine to the Michigan patients, as one of the packages carrying this medicine arrived from the shipper "RESHIP US LOGISTICS SERVICE INC., 13820 NE Airport Way, Portland, OR 97251" (the Portland location of the business Reship).  ECF No. 1, PageID.44, ¶ 149.  Reship's terms and conditions explicitly prohibit the cross-border shipment of pharmaceuticals.  *Id.* PageID. 45, ¶ 150.

---

[1] It is unclear whether any patient receiving the medication was aware that they were making this certification.

6

While Defendant has not disputed any of the facts above in its Motion, it has asserted that it does not do business in Michigan; it does not have locations or personnel in Michigan; it does not advertise or market itself in Michigan or to Michigan residents; it does not direct any action at the Michigan market; and it has no ongoing business relationships with Michigan entities.  ECF No. 21, PageID.135.

## ARGUMENT

### I.     The Court has Personal Jurisdiction over Campbell

To assert personal jurisdiction over a nonresident, a federal district court's action must be both (1) authorized by the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment.  *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1115 (6th Cir. 1994).  A court may exercise personal jurisdiction based on either general jurisdiction or specific jurisdiction.   Neither party contends that Campbell is subject to the general jurisdiction of this Court as it is domiciled in British Columbia, Canada.  For specific jurisdiction to apply, "'the *suit*' must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.'"  *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017) (internal citations omitted).  "In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'"  *Id.*

> **A.      Plaintiffs Have Presented a Prima Facie Case that Michigan's Long-Arm Statute Authorizes Limited Personal Jurisdiction over Defendant**

Under Michigan law, limited personal jurisdiction is extended over a non-resident corporation in claims "arising out of the act or acts which create any of the following relationships," including: "[t]he transaction of any business within the state" under Mich. Comp. Laws § 600.715(1), and "[t]he doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort" under § 600.715(2).  Mich. Comp. Laws § 600.715.  The "transaction of any business" necessary for limited personal jurisdiction under § 600.715(1) is established by "the slightest act of business in Michigan." *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988).  "The word 'any' means just what it says. It includes 'each' and 'every.'" *Id.* (citing *Sifers v. Horen*, 385 Mich. 195, 199 n.2, 188 N.W.2d 623, 264 (1971)).  This is "intended to be liberally construed in favor of recognizing limited personal jurisdiction especially where an ordinary commercial transaction is involved, absent violation of due process of law." *Lazzaro v. Charlevoix Lakes*, 108 Mich.App. 120, 125, 310 N.W.2d 295, 297 (1981).

Defendant's actions easily fall within the scope of Michigan's long arm statute.  Plaintiffs and Campbell agree that Campbell filled prescriptions for Canadian Xolair® medicine in December 2024 and in February 2025, that a Campbell Heights Pharmacy label was affixed to the medicine and a packing slip

8

enclosed in the package, both of which included the patients' and medical practice's Michigan addresses, that Campbell's packing slip represented that the medications were prescribed by doctors located in Michigan,[2] and that Campbell used a common carrier to ship the Canadian Xolair® medicine to the patients, who were located in Michigan.  ECF No. 21-2, PageID.156-57.  Taking the term "transaction" at its face, the fulfilment and shipment of prescription orders represent a transfer of goods between parties, sufficient to constitute "the slightest act of business in Michigan." *Lanier*, 843 F.2d at 906.  And the "arising out of" requirement of § 600.715 is satisfied because the alleged economic harm and trademark infringement that form the basis of Plaintiffs' suit were directly related to Campbell's transaction of business in Michigan.

Consequently, the personal jurisdiction analysis turns on whether its exercise would deny Campbell due process.

### B.    Due Process Will Not Be Violated by Michigan's Exercise of Limited Personal Jurisdiction over Campbell

"In order for a court to assert limited personal jurisdiction over an out-of-state defendant, the following criteria must be met:

'First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.

---

[2] This is inconsistent with the Declaration of Shawn Sandu submitted by Campbell in connection with its Motion, which states that Campbell "received a written prescription from a Canadian prescriber for Xolair (omalizumab)."  ECF No. 21-2, PageID.156.

> Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.'"

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 889–90 (6th Cir. 2002) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968)).

Plaintiffs hold the initial burden of establishing the Court's personal jurisdiction over the Defendant; however, absent an evidentiary hearing, Plaintiffs need only make a *prima facie* showing of jurisdiction. *Id.* at 887. The court must construe the facts in the light most favorable to Plaintiffs in reviewing a dismissal pursuant to Rule 12(b)(2), and will not consider facts proffered by the Defendant that conflict with those offered by the Plaintiffs. *Id.*

### 1. Defendant Has Purposefully Availed Itself of the Privilege of Conducting Activities within Michigan

To satisfy the first prong of the specific jurisdiction test, Plaintiffs must demonstrate that Campbell purposefully directs activities toward the forum state or purposefully avails itself of the privilege of conducting activities within the forum state. "The proper test for personal jurisdiction is not based on a 'percentage of business' analysis, . . . but rather on whether the absolute amount of business conducted by [defendant] in Michigan represents something more than 'random, fortuitous, or attenuated contacts' with the state." *Neogen*, 282 F.3d at 891–92. Moreover, where a defendant "has created 'continuing obligations' between himself

10

and the residents of the forum, he manifestly has availed himself of the privilege of conducting business there." *In re Trade Partners, Inc., Inv'r Litig.*, 532 F.Supp.2d 904, 910 (W.D. Mich. 2007) (internal citations omitted). Nor is physical presence in a forum state required, and the Supreme Court has "consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.*

Campbell claims it has not purposefully availed itself of the forum state, because it does not do business in Michigan; it does not have locations or personnel in Michigan; it does not advertise or market itself in Michigan or to Michigan residents; it does not direct any action at the Michigan market; and it has no ongoing business relationships with Michigan entities. ECF No. 21, PageID.135. However, companies need not engage in some or all of these activities in order to purposefully avail themselves of a forum state, particularly where they have created continuing obligations between themselves and the residents of the forum.

Here, Campbell's activities in the forum constitute more than just "isolated," one-off commercial transactions, such as the purchase of a consumer good from a retail store. Campbell instead dispenses and ships specialty medication to specific individual patients. This transaction is not random or fortuitous; it is a byproduct of SHARx's relationship with its customers and Campbell as a prescription fulfillment partner. The provision of medicine is an ongoing transaction between not only a

11

patient and their doctor, but also a patient and their pharmacist, and the prescribing doctor and the pharmacist, particularly where, as here, the medicine at issue is a specialty long-term drug versus an over-the-counter product.

This relationship between Michigan patients and Campbell is only underscored by Campbell's decision to add its own label to the Canadian Xolair® medicine before shipment, as shown below:



Campbell added its own trade name to the goods before they were shipped to Michigan. Campbell provides its own instructions for administering the medicine, and it also provides a contact number for patients to call directly with any questions regarding their prescription. And notably—despite Campbell's emphasis that this is an "isolated" transaction—the label shows multiple refills available, which will necessarily involve multiple interactions between the patients and Campbell. This situation is analogous to *Neogen*, where the defendant, a medical diagnostic testing company, developed multiple touchpoints with its customers, including mailing of a

12

collection form, collecting samples, and then mailing test results or otherwise making them available via a password-protected website for the customer.  282 F.3d at 886–87.  Similarly to Campbell's pharmaceutical transactions, NGS "welcomed [customers'] individual business on a regular basis," even when the potential customers from Michigan are the ones initiating the contact with the defendant to purchase its services.  *Id.* at 891.

Defendant relies upon several inapposite cases to assert that these Michigan transactions are isolated, unsolicited, and without purpose or intention. However, these cases concern instances of *plaintiff*-led outreach, and telephone and written contact, without more.  *See Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147 (1997) (plaintiff approached defendant, via fax and telephone, with offer for sale of goods, which the court determined was insufficient to establish personal jurisdiction); *K&B Capital, LLC v. RDK Truck Sales and Serv., Inc.*, No. Civ. A. 5:05CV-17-R, 2005 WL 1568176, at *1 (W.D. Ky. June 28, 2005) (mere faxes and telephone calls insufficient to establish minimum contacts); *In re Impact Absorbent Techs., Inc.*, 106 F.3d 400 (6th Cir. 1996) (single sale giving rise to the cause of action was initiated by plaintiff; consequently held that telephone calls and letters, without more, do not rise to the level of purposeful availment contemplated by due process).

13

Finally, Campbell attempts to draw parallels to the facts in *Chittenden* to assert that filling a prescription for a patient residing in the forum state is insufficient to create personal jurisdiction.  *See* ECF No. 21, PageID.148 (discussing *Chittenden* case).  However, unlike the present action, in *Chittenden*, the patient's primary physician and prescriber both lived in Quebec, and the patient (who lived in Vermont) would regularly visit Quebec for treatment.  *Chittenden Tr. Co. v. F. LaChance d/b/a Pharmacie Iberville*, 464 F.Supp. 446, 447 (D. Vt. 1978).  The patient's ingestion of the drugs in Vermont was, in effect, incidental to the provision of services in Quebec, and did not enter the stream of commerce in the forum.  *Id.* By contrast, the Michigan patients here ostensibly believed they would be receiving their prescriptions from a U.S.-based pharmacy (as indicated by the SHARx Prescription Order Form); their doctors are licensed to practice medicine in Michigan and operate clinics in Michigan; and the patients do not otherwise visit Canada to access or obtain Xolair® medicine.  Indeed, although Defendant represents on its packing slip that the medications were prescribed by doctors in Michigan, Mr. Sandhu attests that Campbell received and filled a written prescription from a Canadian prescriber.  ECF No. 21-2, PageID.156, ¶¶ 12-13.  Unlike in *Chittenden*, this Canadian prescriber never met, much less examined or provided any treatment to the Michigan residents who received the Canadian Xolair® medicine from Campbell.

14

Taken together with the rest of the Complaint, and in a light most favorable to Plaintiffs, Plaintiffs' allegations are more than sufficient to satisfy the "relatively slight" burden of a *prima facie* showing.  *Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504–05 (6th Cir. 2020).

> **2.     This Action Arises Out of or Relates to the Medicine Shipment Activities that Campbell Has Directed at Michigan**

This action "arises out of or relates to" the contacts between Campbell and Michigan.  The activity directed at the forum need not be the but-for cause of the claim; rather, specific jurisdiction requires only that there be some relationship between the forum-related activities and the claim at issue.  *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021).  Where a party's claims "allege [trademark-based] harm caused by Defendants' sales of products," they "clearly arise out of and relate to Defendants' conduct of selling those same products to [Michigan] residents."  *AMB Media, LLC v. OneMB, LLC*, No. 23-5607, 2024 WL 2052151, at *7 (6th Cir. May 8, 2024); *see also Bird v. Parsons*, 289 F.3d 865, 876 (6th Cir. 2022) (noting that trademark violations cause injury "where the plaintiff does business and in the state where its primary office is located").

Such relationship exists here.  Plaintiffs conduct substantial business in Michigan, and Plaintiffs' injuries arise from Campbell's importation of infringing medicines into this forum, which caused the substitution of patients' prescriptions

for the U.S. Xolair® medicine with materially different Canadian Xolair® medicine.

Such importation scheme has resulted in confusion and concern among Michigan

patients, physicians and others in the medical profession.  It has also led to Plaintiffs

suffering harm from the continued loss of goodwill and reputation established by

Plaintiffs, as a result of the materially different Canadian Xolair® medicine provided

to patients in Michigan. Campbell's Motion does not otherwise address this prong

of the specific jurisdiction analysis and therefore concedes the same.

### 3. The Exercise of Jurisdiction over Defendant Comports with Fair Play and Substantial Justice

To determine whether the exercise of personal jurisdiction comports with fair

play and substantial justice, courts consider "the burden on the defendant, the interest

of the forum state, the plaintiff's interest in obtaining relief, and the interest of other

states in securing the most efficient resolution of controversies." *AMB Media*, 2024

WL 2052151, at *7 (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1268 (6th

Cir. 1996)).   Where purposeful availment and forum related activities are

established, "there is an inference that the exercise of jurisdiction is reasonable."

*Audi AG and Volkswagen of Am., Inc. v. D'Amato*, 341 F.Supp.2d 734. 748 (E.D.

Mich. 2004).

Defendant argues that it would be significantly burdensome for it to defend a

case in Michigan given its location in British Columbia, and further, that Michigan

has little interest in this dispute as "there is not a single allegation about a specific

16

Michigan consumer who was confused when they received Canadian Xolair instead of U.S. Xolair."  ECF No. 21, PageID.150.  However, Defendant's assertion of burden based on its Canadian residency is not persuasive, as it chose to conduct business outside of British Columbia and no doubt would face similar burdens in any other U.S. jurisdiction in which it was conducting business dealings.  Further, Defendant's characterization of the allegations in the Complaint are plainly inaccurate, as the Complaint alleges in detail that medical staff at each location of the Michigan medical practice were confused when they received a shipment of the Canadian Xolair® medicine.  ECF No. 1, PageID.30-31, ¶¶ 90, 92-94.  As such, Michigan has an obvious interest in hearing the dispute given the alleged injury's location and the actual confusion that has taken place, *see Bird*, 289 F.3d at 876, as well as its interest in ensuring that its residents are protected from potentially unsafe medicines which could cause adverse events, serious patient injury, and even death. Plaintiffs also have a strong interest in obtaining relief from Defendant's infringement, and, although allegations of actual confusion are present in the Complaint, they are not necessary in a determination of *likelihood* of confusion. Taken together, the forum state's interest, and Plaintiffs' interest outweigh any burden on Defendant in having to defend its actions in Michigan.

## II.     In the Alternative, the Court Should Grant Plaintiffs' Cross-Motion for Jurisdictional Discovery

Plaintiffs have amply shown that Campbell is subject to personal jurisdiction in this Court.  However, if the Court is not prepared to deny Campbell's Motion on the record presented by the parties, the Court should permit Plaintiffs to conduct jurisdictional discovery.

This Court has authority to "decide the motion upon the affidavits alone; [] permit discovery in aid of deciding the motion; or [] conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Serras v. First Tennessee Bank Nat. Ass'n.*, 875 F.2d 1212, 1214 (6th Cir.1989)).  Limited discovery targeted towards the issue of personal jurisdiction is "appropriate where . . . a party demonstrates that it can supplement its jurisdictional allegations through discovery."  *Powervip, Inc. v. Static Control Components, Inc.*, No. 1:08-CV-382, 2009 WL 152106, at *3 (W.D. Mich. Jan. 21, 2009) (citation omitted).  Courts in this district have held that discovery should be allowed "if the jurisdictional claim has a reasonable basis and it appears that pertinent facts may be uncovered." *Williams Intl. Co., LLC v. Zurich Am. Ins. Co.*, No. 2:20-cv-13277, 2021 WL 1056844, at *2 (E.D. Mich. Mar. 19, 2021); *see also Murtech Energy Servs., LLC v. ComEnCo Sys., Inc.*, No. 2:13-CV-12721, 2014 WL 2863745, at *1 (E.D. Mich. June 24, 2014) (ordering personal jurisdiction discovery where "the record is sufficiently muddy in a number of areas related to application

18

of Michigan's long-arm statute and [foreign corporate defendants'] due process rights"); *Malone*, 965 F.3d at 506 (remanding the case where the district court considered the defendant's affidavit but declined to allow jurisdictional discovery, as the plaintiff's "inability to produce evidence reveals why they need discovery or an evidentiary hearing," particularly where the affidavit "release some of the things [defendant] did not do, [but] leaves plenty of questions about what it did do").

Jurisdictional discovery would thus be appropriate here, where Campbell intentionally obscures the nature and extent of its transactions in Michigan. In Campbell's Motion, it lists all of the elements that it does not have in Michigan, including offices, business licenses, and personnel.  However, Plaintiffs never asserted that those factors were present, nor that Plaintiffs were relying on them to support personal jurisdiction.  Plaintiffs' jurisdictional claim is based on the prescriptions filled and shipped to Michigan patients, at least three of which they are aware. Similarly to *Malone*, Campbell is notably silent regarding the amount and nature of the transactions it has conducted in Michigan over time and has not attested that the three shipments Plaintiffs have been able to identify are the only shipments ever made by Campbell to Michigan. If Plaintiffs were allowed to conduct jurisdictional discovery, Plaintiffs would focus on the following narrow topics:

- The nature and number of transactions Defendant conducted with Michigan residents for the past three years, including (1) number of

19

prescriptions filled which have been shipped to Michigan addresses, year over year; (2) type of medicines being shipped to Michigan, including not only Xolair® but any other medicines developed and manufactured by Novartis and/or Genentech; and (3) shipments of Canadian Xolair® medicine across the United States, year over year and by state.

- The nature of the relationship between SHARx and Defendant, including any contracts and/or agreements between the parties, the geographic scope of any such agreement, and Defendant's knowledge and awareness of SHARx's activities in the United States and Michigan specifically, to determine how a SHARx prescription order form for a pharmacy in Coral Gables, Florida, results in fulfillment by a pharmacy in British Columbia, Canada;

- The nature of the relationship between University Pharmacy and Defendant, including any contracts, agreements and/or communications, in order to ascertain how Defendant received the prescription from SHARx and/or University Pharmacy;

- The identity of the Canadian prescriber who wrote the prescription for the Canadian Xolair® medicine that was filled by Defendant, and any connection between that prescriber and SHARx and/or University

20

Pharmacy, or any patient or health care practitioner residing in Michigan; and

- Any communications between Defendant and the common carrier with whom it transferred the prescriptions for shipment to the Michigan residents, including any knowledge or understanding of the common carrier's terms and conditions, and whether those terms and conditions prohibited cross-border pharmaceutical shipments.

- Any communications between Defendant and any patient relating to the shipment of prescriptions to Michigan, including any communications related to that patient's understanding of the "Patient Customs Statement" included in Defendant's packing slips.

These topics are each pertinent to understanding whether Campbell has purposefully availed itself of the privileges and benefits of conducting business with the forum state. Although not dispositive, the scope of transactions Campbell has entered into with Michigan residents could support Plaintiffs' assertions that these business dealings in Michigan were not mere "isolated" sales transactions and instead demonstrate deliberate undertakings on Campbell's part. Understanding the nature of Campbell's relationships with Defendant SHARx, LLC, University Pharmacy, and the Canadian prescriber referenced in the Motion, including not only the scope of any agreements between any of these parties but also communications

21

related to Campbell's transactions in Michigan, as well as any relationship between these entities and the Michigan patients and health care practitioners, would allow Plaintiffs to determine Defendant's business presence in the forum state.  Finally, any communications between Defendant and the common carrier it used to transport the infringing products will assist Plaintiffs' understanding of Defendant's intentions to conduct business in Michigan.  Each of these limited topics of discovery are relevant to the Court's personal jurisdiction analysis.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion outright so that the parties can litigate their dispute on the merits and complete discovery in the normal course.  But if the Court is not yet inclined to deny the Motion, Plaintiffs respectfully request permission to take jurisdictional discovery of Defendant.

Dated: March 24, 2026

Respectfully submitted,

Miller, Canfield, Paddock and Stone, PLC

By:   */s/ Thomas W. Cranmer*
Thomas W. Cranmer (P25252)
Matthew P. Allen (P57914)
840 W. Long Lake Rd., Ste. 150
Troy, MI 48098
(248) 267-3290
cranmer@millercanfield.com
allen@millercanfield.com

***Attorneys for Plaintiffs Novartis AG and Genentech, Inc.***

22

Michael X. Imbroscio
Robert N. Hunziker
Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001
(202) 662-6000
mimbroscio@cov.com
rhunziker@cov.com

Khala James
Covington & Burling LLP
Salesforce Tower
415 Mission Street
Suite 5400
San Francisco, CA 94105
(415) 591-6000
kjames@cov.com

***Attorneys for Plaintiff Genentech, Inc.***

Anna Kurian Shaw
Carrie DeLone
Lauren Cury
Hadley Dreibelbis
Hogan Lovells US LLP
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5710
anna.shaw@hoganlovells.com
carrie.delone@hoganlovells.com
lauren.cury@hoganlovells.com
hadley.dreibelbis@hoganlovells.com

***Attorneys for Plaintiff Novartis AG***

23

## CERTIFICATE OF SERVICE

Thomas W. Cranmer of Miller, Canfield, Paddock and Stone, P.L.C. states that on March 24, 2026 he served a copy of the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

*/s/Thomas W. Cranmer*
Thomas W. Cranmer (P25252)

50409649.4/132787.00004