## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

NOVARTIS AG and GENENTECH, INC.,

       Plaintiffs,

   v.

SHARx, LLC and CAMPBELL HEIGHTS PHARMACY LTD.,

       Defendants.

Case No. 4:26-cv-10371
Hon. Shalina D. Kumar

## DEFENDANT SHARx, LLC's FRCP 12(b)(6) MOTION TO DISMISS PLAINTIFFS' COMPLAINT

Defendant SHARx, LLC ("SHARx") respectfully moves the Court to dismiss Plaintiffs Novartis AG and Genentech, Inc's ("Plaintiffs") Complaint (ECF No. 1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. The bases for the relief requested in this motion are set forth in the accompanying Brief in Support.

Pursuant to Local Rule 7.1, counsel for SHARx met and conferred with counsel for Plaintiffs on March 27, 2026, regarding the relief requested in this motion and the legal bases supporting it. Counsel for SHARx sought Plaintiffs' concurrence but was unable to obtain it. Counsel for Plaintiffs have indicated their intent to oppose this motion.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

Dated: March 27, 2026

By: /s/ Patrick M. McCarthy

Patrick M. McCarthy (P49100)
Stephanie S. Sitto (P85526)
Claire E. Montgomery (P87717)
450 W Fourth Street
Royal Oak, Michigan 48067-2557
T: (248) 645-1483 | F: (248) 645-1568
PMcCarthy@HowardandHoward.com
SSitto@HowardandHoward.com
CMontgomery@HowardandHoward.com

David C. Van Dyke
Kevin P. Shortsle
Madison J. Scaggs (*Admission Pending*)
Anna R. Ranger (*Admission Pending*)
Megan M. Fogarty (*Admission Pending*)
T: (312) 456-3682 | F: (312) 939-5617
DVanDyke@HowardandHoward.com
KShortsle@HowardandHoward.com
MScaggs@HowardandHoward.com
ARanger@HowardandHoward.com
MFogarty@HowardandHoward.com

***Attorneys for Defendant SHARx, LLC***

2

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| NOVARTIS AG and GENENTECH, INC., <br><br>         Plaintiffs, <br><br>     v. <br><br> SHARx, LLC and CAMPBELL HEIGHTS PHARMACY LTD., <br><br>         Defendants. | Case No. 4:26-cv-10371 <br> Hon. Shalina D. Kumar |

**DEFENDANT SHARx, LLC's BRIEF IN SUPPORT OF ITS FRCP 12(b)(6)**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

## ISSUES PRESENTED

**Whether the Complaint should be dismissed under FRCP Rule 12(b)(6) because:**

1. Plaintiffs fail to state a claim for trademark infringement (Counts I and II) because they have not pled sufficient facts that support the conclusion that SHARx used their trademarks in a non-trademark way.

2. Plaintiffs fail to state a claim for trademark infringement (Counts I and II) because they have not pled sufficient facts that plausibly support a likelihood of consumer confusion.

3. Plaintiffs' claims for trademark infringement (Counts I and II) are barred by the first sale doctrine.

4. Plaintiffs' claims for unfair competition and false designation of origin under the Lanham Act (Count II), violations of the Michigan Consumer Protection Act (Count IV), common law unfair competition (Count V), and unjust enrichment (Count VI) fail because they rest on the same insufficient allegations as their claims for trademark infringement.

5. Plaintiffs' claim for violations of the Michigan Consumer Protection Act (Count IV) fails under FRCP 9(b) because Plaintiffs have not pleaded with particularity the circumstances giving rise to SHARx's alleged liability.

i

6.      Plaintiffs fail to state a claim for unjust enrichment (Count VI) because they do not allege that they directly conferred a benefit on SHARx that is unjust for it to retain.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

### Statutes

15 U.S.C. § 1114

15 U.S.C. § 1125(a)(1)(A)

### Cases

*Audi AG v. D'Amato*, 469 F.3d 534 (6th Cir. 2006)

*Bodine Perry, PLLC v. Bodine*, 667 F. Supp. 3d 617 (N.D. Ohio 2023)

*Coach, Inc. v. Goodfellow*, 717 F.3d 498 (6th Cir. 2013)

*Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297 (11th Cir. 2001)

*Delta Air Lines, Inc. v. TDM Invs., LLC*, No. 18-cv-968, 2018 U.S. Dist. LEXIS 135125 (N.D. Ill. Aug. 10, 2018)

*Food Scis. Corp. v. Nagler*, No. 09-1998, 2010 U.S. Dist. LEXIS 27236 (D.N.J., Oct. 10, 2010)

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009)

*Kassa v. Detroit Metro Convention*, 150 F. Supp. 3d 831 (E.D. Mich. 2015)

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999)

*One Vodka, LLC v. Benchmark Bev. Co., LLC*, No. 21-11456, 2022 U.S. Dist. LEXIS 51677 (E.D. Mich. Mar. 22, 2022)

*Orleans Int'l Inc. v. Revier Brand Grp., LLC*, No. 2:21-cv-11335, 2025 U.S. Dist. LEXIS 192320 (E.D. Mich. Aug. 21, 2025)

*Wellnext LLC v. OVM LLC*, No. 17-CV-62107, 2017 U.S. Dist. 218128 (S.D. Fla. Feb. 15, 2017)

## TABLE OF CONTENTS

ISSUES PRESENTED.................................................................................i

CONTROLLING OR MOST APPROPRIATE AUTHORITY ............................iii

INTRODUCTION ........................................................................... 1

STATEMENT OF FACTS ................................................................ 4

LEGAL STANDARD ...................................................................... 7

ARGUMENT ................................................................................. 7

I.      Count I Should Be Dismissed Because Plaintiffs Have Not
        Plausibly Alleged Sufficient Facts for Trademark
        Infringement .................................................................... 7

        A.      Plaintiffs Fail to Plausibly Allege Trademark Use by
                SHARx ................................................................... 8

        B.      Plaintiffs Have Not Plausibly Alleged Consumer
                Confusion .............................................................. 10

        C.      Plaintiffs Have Not Alleged Requisite Facts for
                Contributory Infringement ........................................ 12

II.     The First Sale Doctrine Bars Plaintiffs Claims ........................ 13

        A.      Plaintiffs' Admit that Canadian Xolair® is Genuine......... 13

        B.      The Material Differences Exception Cannot Save
                Plaintiffs ............................................................... 15

                1.      Plaintiffs Allege No Instances Of Quality Control Issues ...... 17

                2.      Prescribing Information is Not a Material Difference Likely to
                        Cause Confusion .......................................... 21

III.    Plaintiffs Have Not Alleged Sufficient Facts for Federal
        Unfair Competition & False Designation of Origin (Count
        II), Violations of Michigan's Consumer Protection Act
        (Count IV), Common Law Unfair Competition (Count V),
        or Unjust Enrichment (Count VI)....................................... 23

IV.    Plaintiffs Have Not Alleged Sufficient Facts for Unjust Enrichment in Count VI .................................................................... 24

CONCLUSION ............................................................................................ 25

## TABLE OF AUTHORITIES

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................1, 7

**Cases**

*Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG),
  2020 U.S. Dist. LEXIS 186403 (E.D.N.Y. Feb. 28, 2020) ..................................19

*Anago Franchising, Inc. v. IMTN, Inc.*, No. 11-2639, 477 F.
  App'x 383 (7th Cir. 2012) ...............................................................................22

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ........................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................7

*Bird v. Parsons*, 289 F.3d 865 (6th Cir. 2002) ...................................................8

*Bodine Perry, PLLC v. Bodine*, 667 F. Supp. 3d 617 (N.D. Ohio
  2023) ..................................................................................................................24

*Brilliance Audio, Inc. v. Haights Cross Comms., Inc.*, 474 F.3d
  365 (6th Cir. 2007) ............................................................................................13

*Coach, Inc. v. Goodfellow*, 717 F.3d 498 (6th Cir. 2013) ...................................8

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365
  (6th Cir. 2011) ...................................................................................................19

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music
  Ctr.*, 109 F.3d 275 (6th Cir. 1997) ..................................................................10

*Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297 (11th
  Cir. 2001) ...........................................................................................................20

*Delta Air Lines, Inc. v. TDM Invs., LLC*, No. 18-cv-968, 2018
  U.S. Dist. LEXIS 135125 (N.D. Ill. Aug. 10, 2018) .........................................17

*DirecTV, Inc. v. Treesh*, 487 F.3d 471 (6th Cir. 2012) .......................................7

*Dow Corning Corp. v. Jie Xiao*, No. 11-10008, 2011 U.S. Dist.
  LEXIS 54619; 2011 WL 2015517 (E.D. Mich. May 20, 2011) ...........................9

*Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083 (9th Cir.
  1998) ...................................................................................................................15

*Enesco Corp.*, 146 F.3d 1083 (9th Cir. 1998) .....................................................15

*FKA Distrib. Co. v. Highflyer, LLC*, No. 24-cv-11320, 2025 U.S. Dist. LEXIS 6301 (E.D. Mich. Jan. 13, 2025)..............................................24

*Food Scis. Corp. v. Nagler*, No. 09-1998, 2010 U.S. Dist. LEXIS 27236 (D.N.J., Oct. 10, 2010)..............................................20

*Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261 (6th Cir. 1985)..............................................11

*Garmon Corp. v Healthypets, Inc.*, No. 5:18-cv-00809-ODW (SHKx), 2019 U.S. Dist. LEXIS 83112 (C.D. Cal. May 16, 2019).............................................. 13, 15

*Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494 (6th Cir. 2013) ..............................................10

*Handy-Clay v. City of Memphis*, 695 F.3d 531 (6th Cir. 2012) ..............................................7

*Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603 (6th Cir. 2009) ..............................................8

*Interactive Prods. Corp. v. A2Z Mobile Office Solutions*, 326 F.3d 687 (6th Cir. 2003) ..............................................8

*Inwood Lab'ys, Inc. v. Ives Laby's, Inc.*, 456 U.S. 844 (1982) ..............................................12

*Johnson v. Jones*, 149 F.3d 494 (6th Cir. 1988)..............................................24

*Kassa v. Detroit Metro Convention*, 150 F. Supp. 3d 831 (E.D. Mich. 2015) ..............................................9

*Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980 (9th Cir. 1999)..............................................12

*Maui Jim v. Smartbuy Guru Enters.*, 459 F. Supp. 3d 1058 (N.D. Ill. 2020) ..............................................18

*NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506 (9th Cir. 1987) ..............................................13

*One Vodka, LLC*, 2022 U.S. Dist. LEXIS 51677.............................................. 13, 15

*Orleans Int'l Inc. v. Revier Brand Grp., LLC*, No. 2:21-cv-11335, 2025 U.S. Dist. LEXIS 192320 (E.D. Mich. Aug. 21, 2025)..............................................24

*Storey v. Attends Healthcare Prods.*, No. 15-CV-13577, 2016 U.S. Dist. LEXIS 72505 (E.D. Mich. June 3, 2016)..............................................25

*Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299 (C.D. Cal. 1996) ..............................................15

*Survitec Survival Prods. v. Fire Prot. Serv.*, No. H-21-312, 2025
U.S. Dist. LEXIS 192805 (S.D. Tex. Sep. 30, 2025) ............................................10

*Wellnext LLC v. OVM LLC*, No. 17-CV-62107, 2017 U.S. Dist.
218128 (S.D. Fla. Feb. 15, 2017) .......................................................................21

*Zip Int'l Grp. LLC v. Zenith Foods LLC*, 20-CV-3356; 2021
U.S. Dist. LEXIS 223199 (E.D.N.Y. Nov. 18, 2021)...........................................15

## **Rules**

Fed. R. Civ. P. 12(b)(6) ...................................................................................1, 7

**INTRODUCTION**

Defendant SHARx, LLC ("SHARx) moves to dismiss under Fed. R. Civ. P. 12(b)(6) because Plaintiffs Novartis AG and Genentech, Inc. (collectively "Plaintiffs") fail to state causes of action for trademark infringement and related claims in their Complaint. Plaintiffs use over 50 pages and 200 paragraphs with conclusory and speculative allegations that fail to allege basic and necessary facts against SHARx. While Plaintiffs are unhappy that a few Michigan patients choose to personally import their genuine Xolair® medications from Canada, this is not valid grounds for suing SHARx for infringement.

Specialty drugs, like Xolair® in this case, are medications that are extremely expensive (Xolair® has a $5,000[1] per month list price in the U.S. and generated $3.7 billion in U.S. sales last year). As a result, specialty medications are exceptionally lucrative for "Big Pharma" companies, such as Novartis and Genentech.

For patients, however, the reality is often grim given the ever-rising costs of specialty drugs and the often cost-prohibitive nature of monthly supplies. This, unfortunately, can result in some patients rationing their medication or forgoing taking it as prescribed due to cost. Similarly, many employers in the United States cannot afford to cover the cost of their employees' high-cost and specialty drugs, such as Xolair®.

---

[1] *See* ECF 1, PageID.12, fn. 2, link to Amanda Musa article at p. 5 of 12.

Plaintiffs file this Complaint against SHARx in an attempt to protect their bottom line by forcing patients in the United States, who make the choice to personally import more affordable Xolair® from Canada, to have to purchase the same, but more expensive, medication distributed in the United States.

Plaintiffs' trademark claims fail at the outset because they do not allege facts sufficient to satisfy the basic elements of a Lanham Act violation. To survive dismissal, Plaintiffs must plead non-conclusory facts showing SHARx used their marks in a manner likely to cause consumer confusion. Their Complaint offers none. Instead, Plaintiffs rely on formulaic recitations of legal standards and speculative assertions that are insufficient to give rise to a plausible claim of infringement. Put differently, the Complaint contains no facts about any specific consumer (*i.e.*, the patient) that has allegedly been confused or is likely to be confused.[2] That makes sense given that the three patients mentioned in the Complaint – the only relevant consumers in this case – actually received genuine Xolair® from Canada, the same as U.S. Xolair®, and according to the Complaint these patients continue to receive this same Xolair® from Canada. ECF 1, PageID.34, ¶108.

Moreover, Michigan patients receiving their genuine Xolair® prescriptions from Canadian pharmacies are covered under the first sale doctrine, which bars infringement claims as to subsequent sales of genuine, trademarked products.

---

[2] *See, infra*, p. 15-17.

Plaintiffs concede that the "first sale" occurred and argue instead for a purported exception: "these [trademark] law prohibit the sale of foreign versions of goods that are materially different from those sold by the trademark owner in the United States, **even if the first sale of those trademarked goods was authorized by the trademark owner abroad**." ECF No. 1, PageID.4, ¶12 (emphasis added). The "material differences" exception does not apply here, and Plaintiffs' complaint falls far short of setting forth plausible facts necessary for its application.

For differences to be "material," they, first and foremost, must be likely to cause consumer confusion. Both the Canadian and US Xolair® contain the same drug, same amount, all delivered in a pre-filled syringe for subcutaneous use. The Complaint's allegation of "differences" improperly ignores, and cannot change the fact, that Michigan patients receive genuine Xolair® in the very packaging, with instructions, and other materials that Plaintiffs placed with the Xolair® drug.

Further, the alleged differences would not be likely to cause confusion because they are ancillary and unrelated to the Xolair® product. For example, Plaintiff's assertions about quality control, temperature and storage instructions, foreign recall notices, and variations in prescribing information all concern non-material differences that do not reflect any change in the medication itself (because there is none). The Canadian and U.S. prescribing information pamphlets are substantively identical, the recall allegations are speculative and unsupported by facts, and the

temperature devices function identically. None of Plaintiff's asserted discrepancies alter the composition or safety of Xolair®, thus Plaintiffs do not allege any material differences that give rise to consumer confusion under the Lanham Act. Plaintiffs' trademarks and related claims (Counts I, II, IV, V and VI –the only claims asserted against SHARx) should be dismissed.

### STATEMENT OF FACTS

Plaintiffs' Complaint alleges that SHARx works with employers who have employer-sponsored health plans by helping them source specialty and high-cost drugs for the health plans' members. ECF No. 1, PageID.38, ¶125. SHARx assists employers in sourcing the high-cost and specialty medications through "various methods" including through manufacturers' patient assistance programs, co-pay assistance programs, and mail orders. ECF No. 1, PageID.37-38, ¶¶124-126. Employers with self-funded health insurance plans that do not cover high-cost and specialty drugs hire SHARx to provide procurement and supply chain management services. SHARx works closely with its clients and their underinsured health insurance plan members to identify available non-insurance, cash options for accessing their high-cost medications at a cost they can afford. ECF No. 1, PageID.38, ¶¶125-27. Plaintiffs allege that SHARx's service "most relevant here" is its assistance in sourcing foreign medicines. ECF No. 1, PageID.38, ¶¶125-27.

Xolair® is the name of a biological medication containing the active ingredient omalizumab. ECF No. 1, PageID.19–21, ¶¶70, 71. It is administered via a subcutaneous injection of a single dose pre-filled syringe. *Id.* Xolair® is available in both the United States and Canada. ECF No. 1, PageID.3, ¶8. Plaintiffs allege that Novartis® owns the federally registered XOLAIR Marks and licenses them to Genentech. ECF No. 1, PageID.4, ¶14. Plaintiffs jointly market Xolair in the United States. ECF No. 1, PageID.10, ¶37. Novartis also manufactures Xolair® distributed in Canada. ECF No. 1, PageID.3, ¶8. Both Canada's and the United States' respective regulatory authorities require quality controls "within the supply chain" for medications. ECF No. 1, PageID.19–21, ¶52. The Complaint's images of Xolair packaging show that the Xolair sold in the United States and Canada have the same ingredients and storage requirements. Each dose is accompanied by English language, an identification number, lot number, barcode, and expiration date. ECF No. 1, PageID.25–6, 27–8, ¶¶77, 79.

Plaintiffs' attempt to hold SHARx liable is based on a mere three alleged shipments of Xolair received by a medical practice in Michigan (the "Michigan Clinic" or "Clinic") over the span of over a year. In December 2024, the Michigan Clinic received a delivery of Xolair on behalf of a patient that had the Canadian packaging. ECF No. 1, PageID.30, ¶89. In February 2025, the Michigan Clinic received a delivery of Xolair for a patient at a different office that also had the

5

Canadian packaging. *Id.* Both patients had been prescribed Xolair. ECF No. 1, PageID.29, 30, ¶¶87, 91. Both shipments included information stating that the medication had been filled by Defendant Campbell Heights. ECF No. 1, PageID.31, ¶95. Plaintiffs allege that an employee at the Michigan Clinic contacted SHARx with respect to the shipment received in February 2025. ECF No. 1, PageID.33, ¶105. The Complaint alleges that the SHARx representative stated that they had communicated directly with the patient about the situation. *Id.* It claims that Campbell Heights Pharmacy shipped "Canadian Xolair®" to a patient or the Michigan Clinic on a third occasion, but it does not include any further factual allegations regarding this shipment. ECF No. 1, PageID.6, ¶23.

Plaintiffs have not alleged any facts in support of the Complaints' baseless and conclusory allegation that SHARx's clients' members do not know that they are choosing to order and receive Canadian-branded Xolair. Facts that possibly could suggest that any patients have expressed confusion about their Xolair shipments from Canada are completely absent from the Complaint. Rather, Plaintiffs' Complaint alleges that patients *continue* to choose to have their Canadian-branded Xolair medications shipped to them from Campbell Heights Pharmacy. ECF No. 1, PageID.45, ¶153.

6

## LEGAL STANDARD

To withstand a 12(b)(6) motion, a complaint must allege facts sufficient to "state a claim to relief that is plausible on its face" and to "raise a right to relief above the speculative level." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court construes the complaint in the light most favorable to the plaintiff, accepts its allegations as true, and draws all reasonable inferences in favor of the plaintiff, it "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay*, 695 F.3d at 538 (quoting *Twombly*, 550 U.S. at 555 and *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2012)) (citations and internal quotation marks omitted). It is insufficient to plead facts that make it merely possible the defendant is liable, it must be plausible. *Ashcroft*, 556 U.S. at 678. The complaint must include factual allegations that address each material element of a viable claim. *Handy-Clay*, 695 F.3d at 538.

## ARGUMENT

### I.   Count I Should Be Dismissed Because Plaintiffs Have Not Plausibly Alleged Sufficient Facts for Trademark Infringement

A plaintiff alleging trademark infringement under 15 U.S.C. § 1114 must show: "(1) that it owns a trademark, (2) that the infringer used the mark in commerce without authorization, and (3) that the use of the alleged infringing trademark 'is likely to cause confusion among consumers regarding the origin of the goods offered

7

by the parties.'" *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502 (6th Cir. 2013). A claim for direct infringement fails unless the defendant actually used the trademark in a prohibited manner. *Bird v. Parsons*, 289 F.3d 865, 877 (6th Cir. 2002).

Plaintiffs' allegation that SHARx is liable for "direct and/or contributory infringement" (ECF No. 1, PageID.38, ¶160) fails for several reasons. First, Plaintiffs fail to plausibly whether and how SHARx (as opposed to others) used Plaintiffs' marks in commerce. Second, there is no plausible factual basis for consumer/patient confusion. Third, Plaintiffs' contributory infringement allegations lack the requisite factual predicate to survive dismissal. Regardless, there is no allegation in the Complaint of how SHARx (as opposed to anyone else) used Plaintiffs' trademarks in commerce.

### A.      Plaintiffs Fail to Plausibly Allege Trademark Use by SHARx

For trademark infringement, courts here first ask, "whether the defendants 'are using the challenged mark in a way that identifies the source of their goods [or services].'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009) (quoting *Interactive Prods. Corp. v. A2Z Mobile Office Solutions*, 326 F.3d 687, 695 (6th Cir. 2003)). If not, trademark infringement laws do not apply. *Id.* "Simply put, if a defendant does not use a mark to 'identif[y] the source' of its goods or services, then as a matter of law a plaintiff cannot establish a likelihood of confusion — and

cannot prevail on a federal trademark infringement claim." *Kassa v. Detroit Metro Convention*, 150 F. Supp. 3d 831, 838 (E.D. Mich. 2015).

Plaintiffs allege that SHARx advertises that it will source "several of Plaintiffs' or their related companies' branded U.S. medicines" based on a document that appears to be from the Stark County Board of Commissioners (not from SHARx) as it refers to "our medical plan" and to SHARx in the third person ("Their role is to help facilitate the advocacy process"). ECF No. 1, PageID.38, ¶128, n.14. But, again, this is not a SHARx document, and, regardless, it does not show any specific use by SHARx of Plaintiffs' trademarks in commerce.

The referenced document from the Stark County Board of Commissioners does not use "Xolair" or the dozens of other medication names to identify the source of SHARx's services, nor does it plausibly suggest an endorsement by Plaintiffs of SHARx's services. This document merely lists the medication names as examples of "What is considered a Specialty Prescription[]." ECF No. 1, PageID.38, ¶128. Thus, the Complaint does not plausibly suggest SHARx used Plaintiffs' alleged marks in a "trademark way," and it should be dismissed for that reason alone. *Kassa*, 150 F. Supp. 3d at 838; *Dow Corning Corp. v. Jie Xiao*, No. 11-10008, 2011 U.S. Dist. LEXIS 54619, 2011 WL 2015517, at *6-7 (E.D. Mich. May 20, 2011); *see also Survitec Survival Prods. v. Fire Prot. Serv.*, No. H-21-312, 2025 U.S. Dist. LEXIS

9

192805, at *35-41 (S.D. Tex. Sep. 30, 2025) ("[A] crowded advertisement of many brands is unlikely to confuse consumers as to affiliation with any of them.").

Plaintiffs' attempt to hold SHARx liable based on broad allegations that SHARx advertises assistance in obtaining medications is insufficient. Plaintiffs allege that SHARx helps source medications through various methods, including methods that are not at issue, such as co-pay assistance programs and manufacturer patient assistance programs. ECF No. 1, PageID.38, ¶126. Plaintiffs do not allege that these methods involve trademark infringement or procure non-U.S. versions of medications. Plaintiffs' failure to allege plausible facts showing that SHARx uses their trademarks to advertise international sourcing services warrants dismissal.

### B.     Plaintiffs Have Not Plausibly Alleged Consumer Confusion

The likelihood of consumer confusion is key in any trademark infringement claim and, as such, failure to properly and factually allege such consumer confusion is fatal to the claim. The Sixth Circuit has explained that "[t]he touchstone of liability is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997). The analysis considers whether the "relevant consumers" are likely to be confused. *Id.*; *See also Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc.*, 730 F.3d 494, 517 (6th Cir. 2013) (finding allegations regarding non-consumers'

confusion to be insufficient); *Frisch's Restaurant, Inc. v. Shoney's, Inc.*, 759 F.2d 1261, 1266 (6th Cir. 1985) (stating that it is the effect upon "prospective purchasers that is important").

Here, Plaintiffs' Complaint falls short. Plaintiffs rely on formulaic recitations of legal standards and speculative assertions that are insufficient to give rise to a plausible claim of infringement. Put differently, the Complaint contains no facts about any specific consumer (*i.e.*, the patient) that has allegedly been confused or is likely to be confused.[3] That makes sense given that the few patients mentioned in the Complaint–the only relevant consumers in this case–actually received genuine Xolair® from Canada, the same as U.S. Xolair®, and according to the Complaint these patients continue to receive this same Xolair® from Canada. ECF No. 1, PageID.34, ¶108. There are no plausible facts supporting Plaintiffs' conclusory allegation that SHARx deceives patients into believing they are receiving "U.S. Xolair medicine." ECF No. 1, PageID.37, ¶121.

---

[3] The Complaint makes conclusions of "patient" confusion but offer no facts supporting them. The only factual allegation made in the Complaint pertained to medical staff in Michigan–none of whom are patients/consumers–who had questions about Xolair® received for the actual patients. The medical staff's questions were quickly resolved when Plaintiff Genentech confirmed "that the product was Novartis-branded Canadian Xolair® medicine. . ." ECF No. 1, PageID.31–2, ¶96.

**C.      Plaintiffs Have Not Alleged Requisite Facts for Contributory Infringement**

The Supreme Court has explained that contributory liability might apply where a product manufacturer or distributor "intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement." *Inwood Lab'ys, Inc. v. Ives Laby's, Inc*., 456 U.S. 844, 854 (1982). Plaintiffs do not allege that SHARx is a manufacturer, distributor, or supplies a product. Plaintiffs must show then that SHARx as a service provider, had "[d]irect control and monitoring of the instrumentality used by a third party to infringe the plaintiff's mark." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999). Plaintiffs' allegations made on information and belief, that SHARx uses a U.S. partner pharmacy middleman to send prescriptions to foreign pharmacies, are conclusory and lack factual support. ECF No. 1, PageID.43, ¶145. Plaintiffs have not alleged facts plausibly suggesting SHARx has direct control over any alleged "U.S. partner pharmacy." *Id.* In addition, Plaintiffs' allegations that SHARx facilitates any alleged direct infringement are devoid of factual enhancement and fail to allege the requisite "direct control." *Lockheed*, 194 F.3d at 984. Plaintiffs concede they do not have any facts in support of its claim that SHARx "facilitates delivery" from the Canadian pharmacy to the U.S. patients and medical professionals. ECF No. 1, PageID.44–45, ¶¶105, 148.

12

## II.   The First Sale Doctrine Bars Plaintiffs Claims

The first sale doctrine bars trademark infringement claims where the defendant merely resells authentic, unchanged goods that were already sold once under the trademark. None of the differences alleged by Plaintiffs would lead to likely confusion by the patient. Accordingly, the Court should dismiss Plaintiffs' Complaint for failing to status a claim upon which relief can be granted.

### A. Plaintiffs' Admit that Canadian Xolair® is Genuine

The first sale doctrine precludes a trademark owner from stating a claim for trademark infringement for the resale of the trademark owner's genuine, unaltered goods. *One Vodka, LLC*, 2022 U.S. Dist. LEXIS 51677 at *13 (citing *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 766 (6th Cir. 2005)). The resale of originally trademarked items is generally neither trademark infringement nor unfair competition. *Brilliance Audio, Inc. v. Haights Cross Comms., Inc.*, 474 F.3d 365, 369 (6th Cir. 2007). Moreover, "trademark law generally does not reach the resale of genuine goods bearing the trademark owner's true mark even though the sale is without the trademark owner's consent." *Garmon Corp. v Healthypets, Inc.*, No. 5:18-cv-00809-ODW (SHKx), 2019 U.S. Dist. LEXIS 83112, at *7 (C.D. Cal. May 16, 2019) (quoting *NEC Elecs. v. CAL Circuit Abco*, 810 F.2d 1506, 1509 (9th Cir. 1987)).

Here, the Complaint alleges SHARx imported genuine Xolair® from Canada (referred to as "Canadian Xolair®" throughout the Complaint). ECF No. 1, PageID.3, 5, ¶¶8, 16. It also alleges that Defendant Campbell Heights Pharmacy dispensed and

13

shipped Canadian Xolair® from Canada to Michigan patients. ECF No. 1, PageID.5, 6, 31, ¶¶17, 23, 95 (showing shipping label of Canadian Xolair® from Campbell Heights Pharmacy to Michigan patient (name redacted), ECF No. 1, PageID.44, ¶147). The allegations demonstrate that Plaintiffs sold Xolair®, directly or indirectly, to Canadian pharmacies as the first sale, and these Canadian pharmacies then dispensed and shipped Xolair® to American patients. *Id.*

This is not a case of counterfeiting. The Complaint does not allege the Canadian Xolair® shipped was not genuine. The Complaint sets forth comparisons showing the Canadian Xolair® received by Michigan patients was genuine and bore Plaintiffs' trademarks. Compare ECF No. 1, PageID.8, ¶32 (setting forth XOLAIR Marks) with ECF No. 1, PageID.6, 7, ¶¶21-23, 27-28 (charts showing U.S. Xolair® and Canadian Xolair® bearing the same XOLAIR Marks set forth in ECF No. 1, PageID.8–9, ¶32). Moreover, Plaintiffs admit the Canadian Xolair® was genuine. ECF No. 1, PageID.31–2, ¶96 ("Genentech determined that the product was Novartis-branded Canadian Xolair® medicine . . . ."). On its face, Plaintiffs' Complaint shows that the Canadian pharmacies, having previously first purchased genuine Xolair®, simply dispensed it to American patients via a valid prescription.

The first sale doctrine applies here because Plaintiffs, having sold genuine Xolair® to Canadian pharmacies, cannot now enforce its trademarks against anyone (including SHARx) where American patients, subsequently (in later sales) are

14

dispensed genuine Xolair® from those same Canadian pharmacies. *See Enesco Corp. v. Price/Costco Inc.*, 146 F.3d 1083, 1087 (9th Cir. 1998) (finding that a reseller does not infringe when it resells genuine trademarked goods, thereby eliminating any likelihood of consumer confusion); *see also Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 308 (C.D. Cal. 1996) (holding the first sale doctrine barred trademark claims where all goods were genuine goods made by the trademark owner, eliminating any likelihood of consumer confusion).

### B.     The Material Differences Exception Cannot Save Plaintiffs

The Complaint attempts to present supposed differences between Canadian Xolair® and U.S. Xolair®. An exception to the first sale doctrine is when a "materially different" product is sold that is not genuine and may cause confusion regarding the product's source, quality, or sponsorship. *See Enesco Corp.*, 146 F.3d 1083, 1087 (9th Cir. 1998); *Garmon Corp.*, 2019 U.S. Dist. LEXIS 83112 at *7, 10-11; *One Vodka, LLC*, 2022 U.S. Dist. LEXIS 51677 at *16-20; *Zip Int'l Grp. LLC v. Zenith Foods LLC*, 20-CV-3356; 2021 U.S. Dist. LEXIS 223199 *12 (E.D.N.Y. Nov. 18, 2021) (finding material differences may serve as an indicator of whether consumer confusion is likely).

Specifically, as to the drug itself, Canadian Xolair® and U.S. Xolair® both contain the same active ingredient, omalizumab. ECF No. 1, PageID.20–1, ¶71. Both come in single dose/use prefilled syringes for subcutaneous use and injection. *Id.*

15

Both contain 150 mg/mL omalizumab. *Id. See* Table 1, supra. There are no physical differences between Canadian and U.S. Xolair® alleged in the Complaint. Nor could there be—they are exactly the same drug, in the same amount, packaged in the same device for the same use. *See* Table 1.

**Table 1. Comparison of U.S. and Canadian Xolair® Box Labeling**

| U.S. Xolair® Medicine | |
| --- | --- |
| Canadian Xolair® Medicine | |

Here, Xolair® sold from Canada and Xolair® sold in the Unites States are the same drug with the same ingredients that was manufactured and first sold by Plaintiffs (or their affiliates). They both contain genuine instructions, packaging, and prescribing information of Plaintiffs, without alteration. ECF No. 1, PageID.21-23, 25-27. In short, they are both "The real McCoy". Accordingly, the material

16

differences exception does not apply. *Delta Air Lines, Inc. v. TDM Invs., LLC*, No. 18-cv-968, 2018 U.S. Dist. LEXIS 135125 at \*5 (N.D. Ill. Aug. 10, 2018) (finding that a material difference is a modification that "changes something about a product that is relevant to consumers' decision to purchase the product").

### 1.    Plaintiffs Allege No Instances Of Quality Control Issues

The differences related to shipping, storage conditions, and temperature monitoring are inconsistent, conclusory, and show the Canadian Xolair® received by the Michigan clinic were handled in accordance with Plaintiffs' own standards. Plaintiffs baldly assert that the shipping and temperature protocols cannot be followed by anyone outside of Plaintiffs' control when shipping Xolair® from Canada to Michigan. ECF No. 1, PageID.13, 14, 15, ¶¶48, 52, 53. This is belied by Plaintiffs' Complaint.

Plaintiffs point to different looking temperature tags used for temperature monitoring of the products during shipment. ECF No. 1, PageID.18-19, 25-27, ¶¶68-69, 77-78. But there is no allegation that a specific temperature tag is or was required for the genuine Canadian Xolair® at issue in this case or even that a specific temperature tag is ever required. Regardless, no matter their difference in appearance, each tag does its job by indicating the temperature of the package during shipment of the product. ECF No. 1, PageID.18-19, ¶¶68-69 (showing temperature readings and ranges in degrees Celsius for both U.S. and Canadian Xolair). Like

17

watches or clocks, not all temperature tags need to look the same in appearance for a patient or anyone else to read the temperature. Tellingly, there is no allegation the Canadian Xolair® was ever outside the temperature range during shipment to the Michigan clinic. ECF No. 1, PageID.14, ¶50 (identifying shipping conditions), PageID.18, ¶68 (showing the Canadian Xolair® received by the Michigan Clinic). *See Maui Jim v. Smartbuy Guru Enters.*, 459 F. Supp. 3d 1058, 1084 (N.D. Ill. 2020) (finding no material differences based on allegations regarding shipping delays).

Plaintiffs similarly complain the labeling for the storage conditions of U.S. and Canadian Xolair® are materially different. ECF No. 1, PageID.25-27, ¶¶77-78. Putting aside the fact that the labeling for storage conditions is genuine on both the Canadian and US Xolair® medicines, even a cursory review shows the Canadian Xolair® labeling matches, and is arguably more stringent, than the U.S. Xolair® labeling. Both labels instruct to refrigerate the products at 2°C to 7°C, protect them from light, and not to freeze. ECF No. 1, PageID.25-26, ¶77. The U.S. Xolair® labeling allows the medication to be removed from the refrigerator for no more than 2 days, while the Canadian Xolair® labeling does not. Plaintiffs' allegation that it is material that the Canadian labeling only includes degrees Celsius and not Fahrenheit or that portions appear in both English and French is similarly unavailing. ECF No. 1, PageID.23, 25-27, ¶¶73, 77-78. A patient consumer or anyone else can easily convert Celsius to Fahrenheit, and the French language is duplicative of the English

18

language on the labeling. *See Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407 (NG), 2020 U.S. Dist. LEXIS 186403, at *56 (E.D.N.Y. Feb. 28, 2020) (finding no confusion where labeling included English).

Moreover, none of this is evidence that a patient consumer would somehow be confused that Canadian Xolair® is not genuine Xolair®. American consumers are accustomed to receiving product information, such as laundering instructions on clothing tags or operating instructions for electronics, in several languages and measurement formats, and such ordinary multilingual labeling is not understood to signal a different or non-genuine product.

The Complaint alleges product recalls occurring in different countries and different drug identification numbers are material differences. ECF No. 1, PageID.34, ¶¶61–66, 72. This is wrong. Conclusory allegations related to a potential, speculative recall do not replace actual factual allegations showing consumer confusion. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 373 (6th Cir. 2011) (holding that vague and conclusory allegations, such as undefined policies, undated assertions of government action, and "naked assertions devoid of further factual enhancement", are not entitled to the assumption of truth and cannot establish plausibility); *see also Alcon Vision*, 2020 U.S. Dist. LEXIS 186403, at *62-64 (finding a plaintiff's claim that it will not recall allegedly infringing products to fly in the face of its purported goal of protecting patients).

Moreover, differences in drug identification numbers reflect the different origins of the product, not material differences of the product itself. *See Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1302 (11th Cir. 2001) (finding that the only relevant material differences in trademark inquiries are those that are "relevant to a consumer's purchasing decision"). Interestingly, under Plaintiffs hypothetical allegation, an American patient receiving Canadian Xolair® would not be affected by a recall of U.S. Xolair®. Conversely, the American patient receiving Canadian Xolair® would be notified of a Canadian recall through the Canadian pharmacy using the Canadian drug identification number. At the end of the day, there is no evidence that any of the complained of, speculative recall events would likely cause a consumer any confusion.

The facts here mirror those in *Food Scis. Corp. v. Nagler*, No. 09-1998, 2010 U.S. Dist. LEXIS 27236 at*27-28 (D.N.J., Oct. 10, 2010) where the court dismissed trademark claims based on online resale of genuine dietary supplements. Like the Plaintiffs here, the trademark owner argued that its products were intended to be distributed only through controlled channels involving professional consultation and the defendant's internet sales created confusion. *Id.* at *2. The court found that the complaint identified no material differences between the parties' products and alleged no facts that the defendant failed to follow quality control standards, as

20

consumers would not reasonably expect individualized consultation when buying online. *Id.* at *23-28.

Similarly, in *Wellnext LLC v. OVM LLC*, No. 17-CV-62107, 2017 U.S. Dist. 218128 at *2-4 (S.D. Fla. Feb. 15, 2017), the court held that references to quality control measures are legally meaningful only if the complaint plausibly alleges that the defendant failed to comply with them. *Id.* at *8. Because the complaint did not allege that the defendant's resale of genuine products resulted in damage or material difference, the trademark claims failed. *Id.* Here, Plaintiffs' complaint alleges no instances where the medication was damaged.

### 2. Prescribing Information is Not a Material Difference Likely to Cause Confusion

The alleged differences related to prescribing information for physicians do not evidence that consumer patients, the key constituents, would likely be confused. Plaintiffs' allegations relate to a new use for food allergy and associated safety information found in the U.S. Xolair® label missing from the Canadian Xolair® label. ECF No. 1, PageID.19-21, ¶¶70-71, 76. But this contention misses the key reality. There is no factual allegation of this issue as to any of the patients alleged in the Complaint. American patients under the care of American physicians, who diagnose and treat their patients (not the drug manufacturers), which includes controlling when, how, and for what medications are prescribed. Again, the Complaint does not allege, nor would it be likely, that an American patient prescribed Xolair® for food

allergy by their physician would be confused by receiving genuine Xolair® from Canada. It also is unlikely, and certainly not alleged, that a patient would somehow investigate the physician's prescribing information when receiving the exact medication in the exact amount and dosing frequency their physician prescribed for their food allergy. *See Anago Franchising, Inc. v. IMTN, Inc.*, No. 11-2639, 477 F. App'x 383, 384 (7th Cir. 2012) (emphasizing that alleged differences must relate to actual consumer confusion and dismissing trademark claims where the challenged conduct did not create, but actually reduced, the likelihood of confusion). Accordingly, differences in the physician prescribing information are not evidence of patient confusion.

Furthermore, if a patient were to read the prescribing information, the information provided by the Canadian Xolair® product pamphlet is overwhelmingly the same, if not verbatim, to the US Xolair® product information. Canadian and US Xolair® product information pamphlets contain similar language for indication and usage and recommended dosages. *See* Table 2.

**Table 2: US Xolair® and Canadian Xolair® Product Information**

| US Xolair® Indications and Usage for Asthma | **1 INDICATIONS AND USAGE**<br><br>**1.1 Asthma**<br><br>XOLAIR is indicated for adults and pediatric patients 6 years of age and older with moderate to severe persistent asthma who have a positive skin test or in vitro reactivity to a perennial aeroallergen and whose symptoms are inadequately controlled with inhaled corticosteroids.<br><br>Limitations of Use:<br><br>XOLAIR is not indicated for the relief of acute bronchospasm or status asthmaticus. |
|---|---|

| | |
|---|---|
| Canadian Xolair® Indications and Usage for Asthma | **1   INDICATIONS**<br><br>**Allergic Asthma**<br><br>XOLAIR (omalizumab) is indicated for adult and pediatric patients (6 years of age and above) with moderate to severe persistent asthma who have a positive skin test or *in vitro* reactivity to a perennial aeroallergen and whose symptoms are inadequately controlled with inhaled corticosteroids.<br>• Adults and adolescents (12 years of age and older): XOLAIR has been shown to significantly decrease the incidence of asthma exacerbations and improve control of asthma symptoms in these patients.<br>• Children (6 to <12 years of age): XOLAIR, used as add-on therapy, has been shown to significantly decrease asthma exacerbation rates in children who are inadequately controlled and have a documented history of exacerbation. |
| US Xolair® Recommended Dosage for Asthma | **2.2 Recommended Dosage for Asthma**<br><br>The recommended dosage for asthma is XOLAIR 75 mg to 375 mg by subcutaneous injection every 2 or 4 weeks based on serum total IgE level (IU/mL) measured before the start of treatment and by body weight (kg) [see Dosage and Administration (2.1)]. |
| Canadian Xolair® Recommended Dosage for Asthma | **Dosing Considerations for Asthma**<br><br>Xolair (omalizumab) 75 to 375 mg is administered SC every 2 or 4 weeks. See the dose determination charts below for appropriate dose assignment. Doses (mg) and dosing frequency are determined by serum total IgE level (IU/mL), measured before the start of treatment, and body weight (kg). Doses of more than 150 mg are divided among more than one injection site to limit injections to not more than 150 mg per site. Because the solution is slightly viscous, the injection may take 5-10 seconds to administer.<br><br>The need for continued therapy should be periodically reassessed based upon the patient's disease severity and level of asthma control. |

Canadian and US Xolair® product information pamphlets also include similar usage instructions, anaphylaxis warnings, clinical studies, among others information. *See* Ex. A at p. 7; *see also* Ex. B at 4-5. The product information further underscores that there is no allegation, nor even a mere possibility, of patient confusion.

**III.   Plaintiffs Have Not Alleged Sufficient Facts for Federal Unfair Competition & False Designation of Origin (Count II), Violations of Michigan's Consumer Protection Act (Count IV), Common Law Unfair Competition (Count V), or Unjust Enrichment (Count VI)**

For liability under Section 1125(a)(1)(A) of the Lanham Act, Plaintiffs must satisfy two elements: (1) the false designation must have a substantial economic

effect on interstate commerce; and (2) the false designation must create a likelihood of confusion. *Johnson v. Jones*, 149 F.3d 494, 502 (6th Cir. 1988). Courts apply the same analysis to assess consumer confusion for trademark infringement, unfair competition, and false designation of origin under the Lanham Act, common-law unfair competition, and violation of the Michigan Consumer Protection Act. *FKA Distrib. Co. v. Highflyer, LLC*, No. 24-cv-11320, 2025 U.S. Dist. LEXIS 6301, at *12 (E.D. Mich. Jan. 13, 2025). Plaintiffs' claims for violation of Section 1125(a) of the Lanham Act (Count II), violation of M.C.L.A. §§ 445.903, 445.911 (Count IV), common law unfair competition (Count V), and unjust enrichment (Count VI) are based on the same underlying allegations of consumer confusion and fail for the same reasons as Plaintiffs' trademark infringement claim in Count I. *See Bodine Perry, PLLC v. Bodine*, 667 F. Supp. 3d 617, 634 (N.D. Ohio 2023).

**IV.**   **Plaintiffs Have Not Alleged Sufficient Facts for Unjust Enrichment in Count VI**

To prove an unjust enrichment claim, Plaintiffs must prove (1) SHARx's receipt of a benefit from Plaintiffs, and (2) an inequity to Plaintiffs because SHARx's retention of the benefit. *Orleans Int'l Inc. v. Revier Brand Grp., LLC*, No. 2:21-cv-11335, 2025 U.S. Dist. LEXIS 192320, at *51 (E.D. Mich. Aug. 21, 2025). "Ordinarily, a plaintiff can establish the for the first element, Plaintiffs must allege that they *directly* conferred a benefit on SHARx. *Storey v. Attends Healthcare Prods.*, No. 15-CV-13577, 2016 U.S. Dist. LEXIS 72505, at *34-35 (E.D. Mich. June 3,

24

2016). Plaintiffs' claim for unjust enrichment fails because they have not alleged that they directly conferred a benefit on SHARx. *See* ECF No. 1, PageID.52 at ¶196. Therefore, Count VI must be dismissed.

## CONCLUSION

For all the reasons set forth above, SHARx respectfully requests that the Court dismiss the Complaint in its entirety with prejudice, and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**HOWARD & HOWARD ATTORNEYS PLLC**

Dated: March 27, 2026

By: /s/ Patrick M. McCarthy
      Patrick M. McCarthy (P49100)
      Stephanie S. Sitto (P85526)
      Claire E. Montgomery (P87717)
450 W Fourth Street
Royal Oak, Michigan 48067-2557
T: (248) 645-1483 | F: (248) 645-1568
PMcCarthy@HowardandHoward.com
SSitto@HowardandHoward.com
CMontgomery@HowardandHoward.com

      David C. Van Dyke
      Kevin P. Shortsle
T: (312) 456-3682 | F: (312) 939-5617
DVanDyke@HowardandHoward.com
KShortsle@HowardandHoward.com

*Attorneys for Defendant SHARx, LLC*

25

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF filing system, which will send notification of such filing to all counsel of record.

**HOWARD & HOWARD ATTORNEYS PLLC**

Dated: March 27, 2026          By: /s/ Patrick M. McCarthy
                                       Patrick M. McCarthy (P49100)
                                   450 W Fourth Street
                                   Royal Oak, Michigan 48067-2557
                                   T: (248) 645-1483 | F: (248) 645-1568
                                   PMcCarthy@HowardandHoward.com

4927-3001-6412,

26