# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| NOVARTIS AG and GENENTECH, INC., <br><br>     Plaintiffs, <br><br><br>     v. <br><br><br><br> SHARx, LLC and CAMPBELL HEIGHTS PHARMACY LTD, <br><br>     Defendants. | Case No. 4:26-cv-10371 <br> Hon. Shalina D. Kumar |

## PLAINTIFFS NOVARTIS AG AND GENENTECH, INC.'S OPPOSITION TO DEFENDANT SHARx, LLC's MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ i

TABLE OF AUTHORITIES ................................................................................. ii

ISSUES PRESENTED ........................................................................................ vii

CONTROLLING OR MOST APPROPRIATE AUTHORITY ........................... viii

PRELIMINARY STATEMENT ............................................................................ 1

STATEMENT OF FACTS ..................................................................................... 3

ARGUMENT ......................................................................................................... 6

I.      The Complaint Plausibly Alleges Claims for Trademark Infringement
        and Related Causes of Action. ................................................................. 7

        A.      The Complaint Plausibly Alleges That SHARx Has Used
                Plaintiffs' XOLAIR Marks as Trademarks. ................................. 8

        B.      The Complaint Plausibly Alleges Not Only a Likelihood of
                Confusion but Also Actual Consumer Confusion. ..................... 12

        C.      SHARx's Liability Includes Contributory Infringement. .......... 16

II.     SHARx's First-Sale Defense Is Premature and Meritless. ................... 17

        A.      The Material Differences Alleged in the Complaint Cannot Be
                Challenged on a Motion to Dismiss. .......................................... 19

        B.      The Complaint Identifies Extensive Material Differences. ........ 20

        C.      SHARx's Remaining Material Difference Arguments Are
                Baseless. ..................................................................................... 22

III.    The Complaint Identifies Benefits That Unjustly Enrich SHARx. ....... 24

IV.     If the Court Grants the Motion, It Should Also Grant Leave to Amend. ..... 25

CONCLUSION .................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Adelphia Supply USA*,
Nos. 15-CV-5826 (CBA) (LB), 17-CV-6002 (CBA) (LB), 2019
WL 5696148 (E.D.N.Y. 2019) ........................................................................22

*Abercrombie & Fitch v. Fashion Shops of Kentucky, Inc.*,
363 F. Supp. 2d 952 (S.D. Ohio 2005) .......................................................20, 21

*Alcon Vision, LLC v. Lens.com, Inc.*,
No. 18-CV-407 (NG), 2020 U.S. Dist. LEXIS 186403 (E.D.N.Y.
Feb. 28, 2020) ...............................................................................................19, 20

*Anago Franchising, Inc. v. IMTN, Inc.*,
477 F. App'x 383 (7th Cir. 2012) .......................................................................19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...............................................................................................6

*Beltronics USA, Inc. v. Midwest Inventory Dist., LLC*,
562 F.3d 1067 (10th Cir. 2009) ..........................................................................18

*Bliss Collection, LLC v. Latham Cos., LLC*,
82 F.4th 499 (6th Cir. 2023) .........................................................................12, 14

*Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*,
474 F.3d 365 (6th Cir. 2007) ..........................................................18, 19, 20, 22

*Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*,
78 F.3d 1111 (6th Cir. 1996) ..............................................................................15

*Coach, Inc. v. Goodfellow*,
717 F.3d 498 (6th Cir. 2013) ..........................................................................7, 16

*Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*,
648 F.3d 365 (6th Cir. 2011) ..............................................................................19

*Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*,
109 F.3d 275 (6th Cir. 1997) ..............................................................................14

ii

*Davidoff & Cie, S.A. v. PLD Int'l Corp.*,
  263 F.3d 1297 (11th Cir. 2001) ...................................................................18, 19

*DayCab Co., Inc. v. Prairie Tech., LLC*,
  67 F.4th 837 (6th Cir. 2023) ..............................................................................7

*Dow Corning Corp. v. Jie Xiao*
  No. 11-10008-BC, 2011 WL 2015517 (E.D. Mich. May 20, 2011) .................12

*El Greco Leather Prods. Co. v. Shoe World, Inc.*,
  806 F.2d 392 (2d Cir. 1986) .............................................................................24

*Food Scis. Corp. v. Nagler*,
  No. 09-1798 (JBS), 2010 U.S. Dist. LEXIS 27236 (D.N.J. Mar. 22,
  2010) ................................................................................................................20

*FURminator, Inc. v. Kirk Weaver Enters., Inc.*,
  545 F. Supp. 2d 685 (N.D. Ohio 2008) ............................................................18

*Gamut Trading Co. v. ITC*,
  200 F.3d 775 (Fed. Cir. 1999) .........................................................................18

*Gilead Scis., Inc. v. Meritain Health, Inc.*,
  2025 WL 1745669 (D. Md. 2025) .....................................................................21

*Handy-Clay v. City of Memphis*,
  695 F.3d 531 (6th Cir. 2012) ...................................................................6, 9, 22

*Helene Curtis v. Nat'l Wholesale Liquidators, Inc.*,
  890 F. Supp. 152 (E.D.N.Y. 1995) ...................................................................22

*Hensley Mfg. v. ProPride, Inc.*,
  579 F.3d 603 (6th Cir. 2009) ...........................................................6, 7, 8, 11

*Hoenig Devs., Inc. v. Dial Indus., Inc.*,
  213 F. Supp. 3d 895 (E.D. Mich. 2016) .....................................................24, 25

*Hokto Kinoko Co. v. Concord Farms, Inc.*,
  738 F.3d 1085 (9th Cir. 2013) .........................................................................19

*Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*,
  931 F.2d 1100 (6th Cir. 1991) .........................................................................13

iii

*Iberia Foods Corp. v. Romeo, Jr.*,
   150 F.3d 298 (3d Cir. 1998) ........................................................................18, 24

*Induct-O-Matic Corp. v. Inductotherm Corp.*,
   No. 79-30009, 1982 WL 52120 (E.D. Mich. Nov. 4, 1982) ................................8

*Innovation Ventures, LLC v. N2G Distrib., Inc.*,
   763 F.3d 524 (6th Cir. 2014) .......................................................................13, 14

*Interactive Prods. Corp. v. a2z Mobile Off. Sols., Inc.*,
   326 F.3d 687 (6th Cir. 2003) ..............................................................................8

*Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*,
   456 U.S. 844 (1982)......................................................................................16, 17

*Kassa v. Detroit Convention & Visitors Bureau*
   150 F. Supp. 3d 831 (E.D. Mich. 2015) .............................................................11

*Martin's Herend Imps., Inc. v. Diamond & Gem Trading USA, Co.*,
   112 F.3d 1296 (5th Cir. 1997) .....................................................................18, 23

*Maui Jim, Inc. v. SmartBuy Guru Enters.*,
   459 F. Supp. 3d 1058 (N.D. Ill. 2020).................................................................19

*McDonald's Corp. v. Shop at Home, Inc.*,
   82 F. Supp. 2d 801 (M.D. Tenn. 2000)................................................................12

*Nestle USA, Inc. v. Best Foods LLC*,
   562 F. Supp. 3d 626 (C.D. Cal. 2021) ................................................................22

*Newberry v. Silverman*,
   789 F.3d 636 (6th Cir. 2015) ..............................................................................25

*Ohio State Univ. v. Redbubble, Inc.*,
   989 F.3d 435 (6th Cir. 2021) ..............................................................................16

*Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*,
   816 F.2d 68 (2d Cir. 1987) .................................................................................18

*Procter & Gamble Co. v. Team Techs., Inc.*,
   No. 1:12-CV-552, 2014 WL 12531486 (S.D. Ohio July 3, 2014) ......................17

iv

*R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*,
   462 F.3d 690 (7th Cir. 2006) ...................................................................18

*Realtek Indus., Inc. v. Nomura Secs.*,
   939 F. Supp. 572 (N.D. Ohio 1996) ........................................................9, 23

*Roadget Bus. PTE. Ltd. v. PDD Holdings Inc.*,
   No. CV 24-2402 (TJK), 2026 WL 44864 (D.D.C. Jan. 7, 2026) .......................17

*Shell Oil Co. v. Com. Petroleum, Inc.*,
   928 F.2d 104 (4th Cir. 1991) ...................................................................24

*Singer Mfg. Co. v. Golden*,
   171 F.2d 266 (7th Cir. 1948) ...................................................................11

*Societe Des Produits Nestle v. Casa Helvetia, Inc.*,
   982 F.2d 633 (1st Cir. 1992)......................................................................18

*Solo v. United Parcel Serv. Co.*,
   819 F.3d 788 (6th Cir. 2016) ...................................................................9, 22

*Sports Auth., Inc. v. Abercrombie & Fitch, Inc.*,
   965 F. Supp. 925 (E.D. Mich. 1997) ..........................................................24

*Survitec Survival Prods. v. Fire Prot. Serv.*
   No. H-21-312, 2025 U.S. Dist. LEXIS 192805 (S.D. Tex. Sep. 30,
   2025) .................................................................................................12

*Therma-Scan, Inc. v. Thermoscan, Inc.*,
   295 F.3d 623 (6th Cir. 2002) ...................................................................12

*U.S. Structures, Inc. v. J.P. Structures, Inc.*,
   130 F.3d 1185 (6th Cir. 1997) ...................................................................14

*Wellnext LLC v. OVM LLC*,
   No. 17-CV-62107, 2017 U.S. Dist. LEXIS 218128 (S.D. Fla. Feb.
   15, 2017) ............................................................................................20

*Woodcutters Mfg., Inc. v. Eagle-Picher Indus., Inc.*,
   No. K 81-332, 1982 WL 52148 (W.D. Mich. Jan. 15, 1982).............................8

*Zip Int'l Group LLC v. Zenith Foods LLC*,
   20-CV-3356 (ARR) (PK), 2021 WL 5399452 (E.D.N.Y. 2021) .......................22

v

**Other Authorities**

120 Am. Jur. Proof of Facts 3d 339 (2011) ............................................................7

American Exchange Benefits, *Introducing the SHARx Program*,
    https://americanexchangebenefits.com/images/documents/SHARX
    -Pharmacy_Program.pdf ...................................................................................10

EDSI, *Introducing the SHARx Program*,
    https://cdn.edsi.com/assets/SHARX-Intro-Letter.pdf.......................................10

FDA, Final Response Letter from FDA CDER to Aimed Alliance
    (Mar. 27, 2026), https://www.regulations.gov/document/FDA-
    2024-P-1058-0006 ..............................................................................................5

FDA, Patient Labeling Resources, https://www.fda.gov/drugs/fdas-
    labeling-resources-human-prescription-drugs/patient-labeling-
    resources ........................................................................................................3, 22

McCarthy on Trademarks and Unfair Competition (5th ed. 2026) .........8, 17, 20, 24

Rend Lake College, *Employee Benefit Guide 2025*,
    https://rlc.edu/hubfs/human-
    resources/2025%20Rend%20Lake%20College%20Employee%20
    Benefit%20Guide-booklet.pdf?hsLang=en ........................................................10

South Milwaukee, *A Guide To Your Benefits 2025*,
    https://doa.wi.gov/School%20District%20Health%20Ins%20Attac
    hments/2024-
    25%20South%20Milwaukee%20Benefit%20Guide.pdf....................................10

Stark Cnty. Bd. of Comm'rs, *Health Benefits 2026 Enrollment Guide* (2026)
    https://cms7files1.revize.com/starkcountyoh/Stark%20County%20
    Benefits%20Guide%202026.pdf?t=202601221351250&t=1769108
    162842&?t=202601221351250&t=1769108162842 ........................................10

## ISSUES PRESENTED

1. Whether the Complaint states claims for trademark infringement and related causes of action (Claims I–II and IV–VI) based on Defendant SHARx's unauthorized use of Plaintiffs' XOLAIR marks in connection with its marketing and distribution of non-genuine drug products?

2. Whether SHARx's first-sale defense fails at the pleadings stage because it necessarily relies on improper fact disputes?

3. Whether the Complaint states a claim for unjust enrichment based on the improper benefits SHARx has received from its unlicensed use of Plaintiffs' XOLAIR marks to promote and sell its offerings?[1]

---

[1] SHARx's "Issues Presented" reference a putatively heightened pleading standard for Plaintiffs' claim under the Michigan Consumer Protection Act (Claim IV). ECF 29, PageID.214, ¶ 5.  However, because SHARx did not ultimately brief this issue, *see generally id.*, it is waived, *United States v. Cole*, 359 F.3d 420, 428 n. 13 (6th Cir. 2004) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed [argumentation], are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation omitted).

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365 (6th Cir. 2007)

*Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111 (6th Cir. 1996)

*Coach, Inc. v. Goodfellow*, 717 F.3d 498 (6th Cir. 2013)

*Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524 (6th Cir. 2014)

*Abercrombie & Fitch v. Fashion Shops of Ky., Inc.*, 363 F. Supp. 2d 952 (S.D. Ohio 2005)

## PRELIMINARY STATEMENT

This case presents a straightforward application of black-letter law: the unauthorized diversion of materially different gray-market products into the United States renders the products non-genuine under trademark law, and the distribution of such a product in the United States without authorization constitutes trademark infringement.  SHARx has engaged in exactly this form of trademark infringement by substituting a Canadian version of Plaintiffs' Xolair® medicine in the place of U.S. patients' prescriptions for authentic U.S. Xolair® medicine or inducing others to do so.  SHARx's conduct jeopardizes patient health and safety by robbing Plaintiffs of the ability to exercise their own stringent quality controls over Xolair® medicine sold in the United States and threatens irreparable harm to the hard-earned goodwill associated with the Xolair® medicine and trademarks in the United States.  These continued acts are likely to create confusion—and, indeed, have already created actual consumer confusion as pled in the Complaint.

Despite its attempts to contort trademark doctrine and twist the facts pleaded in the Complaint, SHARx cannot evade liability for its unlawful and unauthorized infringement and importation scheme.

To begin, SHARx's contention that it has never actually used the XOLAIR marks cannot be squared with the facts alleged in the Complaint.  SHARx has both directly, and through its partners, used Plaintiffs' XOLAIR marks to represent,

1

falsely, that it will procure and deliver Plaintiffs' U.S. Xolair® medicine.  It relies on marketing materials advertising that SHARx will source "Xolair" and encourages U.S. physicians to send patient prescriptions to SHARx's partners by ensuring them that it will source "Xolair" from U.S. pharmacies, but ultimately, through an intentionally coordinated scheme with foreign pharmacies and physicians, delivers to patients foreign products bearing the XOLAIR marks that are materially different from the U.S. Xolair® medicine.  Physicians, patients, and others in the United States, of course, understand these statements to mean that SHARx is sourcing U.S. Food & Drug Administration ("FDA") approved U.S. Xolair® medicine authorized for the U.S. supply chain.

Next, SHARx's first-sale defense cannot be reconciled with controlling Sixth Circuit precedent regarding materially different gray-market goods: such a defense is not viable at the pleadings stage, and even if it were, the facts pleaded in the Complaint amply satisfy the intentionally low threshold for plausibly alleging trademark infringement due to material differences.

Finally, SHARx cannot deny at the pleadings stage that it has benefitted from making unlicensed use of Plaintiffs' marks to market and sell its offerings.

For the reasons discussed herein, SHARx's motion should be denied.

2

## STATEMENT OF FACTS

Plaintiffs co-promote in the United States a prescription medicine called Xolair®, which is used for the treatment of patients with severe, persistent allergic asthma, and (in the United States but not Canada) food allergies (the "U.S. Xolair® medicine").  ECF No. 1, PageID.1, ¶ 1.  As a biologic, the U.S. Xolair® medicine requires particular care to ensure its safety and efficacy because its complex composition and sensitivity to variation in storage and handling conditions are susceptible to contamination and degradation.  *Id.*, PageID.2, ¶ 3.

Plaintiffs therefore employ strict quality controls to the manufacture, packaging, and distribution of the U.S. Xolair® medicine in the United States.  *Id.*, PageID.13, ¶ 46.  These include, for example, strict shipping and temperature protocols designed to keep the medicine at a controlled ambient temperature, as required by FDA and to exercise control over the supply chain, including in the event of product recalls.  *Id.*, PageID.14–18, ¶¶ 49–66.  Plaintiffs also stringently adhere to FDA's highly specific packaging and labeling requirements, including for external packaging and inserts with prescribing information, common adverse reactions, or limitations of use, and a patient-directed Medication Guide.  *Id.*, PageID.19–20, ¶¶ 70, 74.[2]  These materials bear a variety of important information

---

[2] A Medication Guide is a uniquely U.S. form of patient-directed labeling that is carefully regulated by FDA, reserved for certain medicines with unique risks, and (continued…)

and instructions for patients and practitioners, such as the warning: "**Do not** use for emergency treatment," which is notably missing from Canadian Xolair® medicine. *Id.*, PageID.20, ¶ 71.

Plaintiffs identify the U.S. Xolair® medicine using the registered XOLAIR trademarks (the "XOLAIR Marks"). *Id.*, PageID.20, ¶ 32. Plaintiffs have invested extensively in the quality and reputation of the U.S. Xolair® medicine under the XOLAIR Marks for over two decades, resulting in the widespread recognition of the XOLAIR Marks as identifying specific high-quality medicines that patients know and trust. *Id.*, PageID.10–12, ¶¶ 35–41.

Plaintiff Novartis AG also promotes in other countries other versions of the Xolair® medicine, such as the Canadian Xolair® medicine. *Id.*, Page ID.3, ¶¶ 8, 44. The Canadian Xolair® medicine, like all of Plaintiffs' ex-U.S. medicines, is neither intended for sale in the United States nor regulated or approved by FDA for U.S. distribution. *Id.*, PageID.13, ¶ 44. As a result of the Canadian Xolair® medicine's development for different populations under different regulatory frameworks, there are numerous material differences between it and the U.S. Xolair® medicine. *Id.*, PageID.13–28, ¶¶ 44–79. Many of these differences are visible on the packaging of the products, such as with respect to languages, measurements, instructions,

---

required by FDA to be dispensed alongside the relevant medicine. *See* FDA, Patient Labeling Resources, https://tinyurl.com/ykjvexff.

warnings, and other FDA-regulated labeling requirements. *Id.*, PageID.18–28, ¶¶ 67–79. Additionally, when the Canadian Xolair® medicine is shipped into the United States by SHARx or its partners, there are significant differences in quality controls as compared to the U.S. Xolair® medicine, as Plaintiffs lose the ability to employ their strict shipping and temperature protocols and to ensure proper product recalls. *Id.*, PageID.13–18, ¶¶ 44–66.

At issue in this suit is Defendants' scheme to substitute unlawfully imported Canadian Xolair® medicine in place of U.S. patients' prescriptions for U.S. Xolair® medicine. *Id.*, PageID.34–36, ¶¶ 109–114.[3] To promote and implement its scheme, SHARx directly and through its partners repeatedly misuses the XOLAIR Marks, including in documents advertising that SHARx will source "Xolair, and MANY, MANY More" for its customers' employees, a "Prescription Request from SHARx Mail Order Program" form that instructs physicians to forward patients' prescriptions so that SHARx can source "Xolair - 90 day supply with 3 refills," and on stickers applied to the boxes of Canadian Xolair® medicine ultimately delivered to patients. *Id.*, PageID.39, 42–44, ¶¶ 130, 142–43, 147.

---

[3] FDA recently reaffirmed the illegality of such importation schemes. FDA, Final Response Letter from FDA CDER to Aimed Alliance (Mar. 27, 2026), https://www.regulations.gov/document/FDA-2024-P-1058-0006 ("FDA has repeatedly made clear that, in most circumstances, it is illegal for individuals to import drugs into the United States for personal use. . . . Generally, prescription medicines purchased from foreign sources are not the FDA-approved versions and FDA cannot ensure their safety, effectiveness, or quality.").

Since Defendants first launched their scheme, Plaintiffs have already learned of at least three instances where patients or their physicians were confused upon receiving materially different Canadian Xolair® medicine—confusion sufficient enough to cause these individuals to contact SHARx and/or Genentech with their concerns. *Id.*, PageID.6, 3, 29–31, 33, ¶¶ 9, 23, 87, 90, 92, 94, 105.

## **ARGUMENT**

To survive a motion to dismiss, a complaint need allege only "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal is not appropriate unless, "constru[ing] the complaint in the light most favorable to the plaintiff, accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of the plaintiff," *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012), the complaint does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555.

The Complaint sufficiently pleads all five[4] claims. SHARx's challenges are identical (other than one additional argument regarding Claim VI (Unjust Enrichment)), ECF No. 29, PageID.244–46, and fail equally for the reasons below.

---

[4] SHARx has not challenged Claim III out of the Complaint's six claims, which claim is directed to Defendant Campbell Heights Pharmacy Ltd.

6

**I.      The Complaint Plausibly Alleges Claims for Trademark Infringement and Related Causes of Action.**

To state a claim for trademark infringement, "a plaintiff must allege facts establishing that: (1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).  Liability extends not only to the entity who directly engages in infringing use of a mark, but under principles of contributory liability, also to one who "intentionally induces another to infringe." *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 503 (6th Cir. 2013).  The direct infringer need not be a party to a lawsuit for indirect infringement.  120 Am. Jur. Proof of Facts 3d 339 (2011).

SHARx's arguments are directed largely to the third element: likelihood of confusion.[5]  It concerns "whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Hensley*, 579 F.3d at 610.  "The general concept underlying the likelihood of confusion is that the public believe that the mark or dress owner sponsored or otherwise approved the use of the trademark or trade dress." *DayCab Co., Inc. v. Prairie Tech., LLC*, 67 F.4th 837, 851 (6th Cir. 2023) (cleaned up).

---

[5] As SHARx points out, the likelihood of confusion analysis applies similarly to Claims I–VI.  ECF No. 29, PageID.244–46.

7

SHARx's unlicensed use of Plaintiffs' marks, directly and through partners, to market and distribute non-genuine drugs is likely to cause such confusion.

### A. The Complaint Plausibly Alleges That SHARx Has Used Plaintiffs' XOLAIR Marks as Trademarks.

In the Sixth Circuit, the likelihood of confusion analysis begins by asking whether defendants are "using the challenged mark in a way that identifies the source" of the goods or services. *Hensley*, 579 F.3d at 610. If so, a consumer may be "likely to notice" the mark "and then think that the [advertised good or service] may be produced by the same company (or a company affiliated with the company)" that owns the mark. *Interactive Prods. Corp. v. a2z Mobile Off. Sols., Inc.*, 326 F.3d 687, 696 (6th Cir. 2003). By contrast, if the defendant is using a term in some other, functional manner, consumers might not draw a connection as to source. *See, e.g.*, *id.* (including "laptraveler" in a "post-domain path of a URL" merely shows "how the website's data is organized").

Here, the Complaint alleges that SHARx is using the XOLAIR Marks in a classically actionable trademark way: to represent to consumers that it will procure and deliver authentic U.S. Xolair® medicine, but instead substituting a different, unauthorized foreign product. *See, e.g.*, *Induct-O-Matic Corp. v. Inductotherm Corp.*, No. 79-30009, 1982 WL 52120, at *12 (E.D. Mich. Nov. 4, 1982) (liability for "the substitution of the goods or wares of one person for those of another"); *Woodcutters Mfg., Inc. v. Eagle-Picher Indus., Inc.*, No. K 81-332, 1982 WL

52148, at *17 (W.D. Mich. Jan. 15, 1982) (liability for "palming off" one good as another); *see generally* 3 McCarthy on Trademarks and Unfair Competition § 25:3 (5th ed. 2026) ("McCarthy") (discussing the long history of liability for the "Substitution of One Brand in Response to an Order for Another").

Though largely ignored by SHARx, the Complaint alleges three distinct ways in which SHARx is using the XOLAIR Marks to carry out its substitution scheme, each of which alone is sufficient to allege trademark infringement.

*First*, SHARx uses with its customers, such as the Stark County Board of Commissioners, marketing materials advertising that SHARx will procure U.S. Xolair® medicine for their employees.  ECF No. 1, PageID.38–39, ¶¶ 128–131.

SHARx's attempt to disclaim ownership of these marketing materials is both procedurally improper and factually misleading.  Procedurally, SHARx's carefully worded argument raises an impermissible fact dispute regarding its involvement in creating and disseminating the advertisement. *See Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 795 (6th Cir. 2016) ("On a Rule 12(b)(6) motion, we must accept all well-pleaded factual allegations as true."); *Handy-Clay*, 695 F.3d at 538 (same); *Realtek Indus., Inc. v. Nomura Secs.*, 939 F. Supp. 572, 582 (N.D. Ohio 1996) (court "will not and should not resolve . . . factual dispute in the context of a motion to dismiss").  Factually, the Complaint plausibly alleges that SHARx at least helped create or distribute the marketing materials, including because they

9

display SHARx's logo, make at least ten additional uses of SHARx's word mark, and even provide a coupon code ("SHARx5 for $5 off") for patients to use when working with SHARx.  ECF No. 1, PageID.38, ¶ 128 n.14.[6]  It is implausible—at best—that SHARx did not help create, or at least approve, this document.[7]

*Second*, SHARx misrepresents to patients' physicians that it will provide authentic U.S. Xolair® medicine by sending them a "Prescription Request from SHARx Mail Order Program."  *Id.*, PageID.42, ¶ 142.  This form encourages the physicians to pass along the patient's prescription to what the physician presumes is a U.S. pharmacy by falsely indicating that SHARx and its partner pharmacy will fill the specified medicine: "Xolair - 90 day supply with 3 refills."  *Id.*, PageID.42–43, ¶¶ 142–43.

Though SHARx ignores this use entirely, the Seventh Circuit has concisely explained why it is actionable trademark use:

> When one orders parts by name of manufacturer, number, and description, he has a right to have his order filled as given, and if substitutions are made in circumstances calculated to lead the purchaser to believe he is getting what he orders when he is not, it is not only a

---

[6] The latest version of this document is available at https://tinyurl.com/3r2tv32m (last visited Apr. 14, 2026).

[7] Though outside the confines of the Complaint, SHARx cannot reasonably claim it is a coincidence that several of its customers use identical language. *See, e.g.*, Rend Lake College, *Employee Benefit Guide 2025*, https://tinyurl.com/awn4xpjv (last visited Apr. 14, 2026); School District of South Milwaukee, *A Guide to Your Benefits 2025*, https://tinyurl.com/mv5tebpe (last visited Apr. 14, 2026); EDSI, *Introducing the SHARx Program*, https://tinyurl.com/43yd24ek  (last visited Apr. 14, 2026); American Exchange Benefits, *Introducing the SHARx Program*, https://tinyurl.com/4bj92tu5 (last visited Apr. 14, 2026).

10

fraud upon the purchaser but also upon the manufacturer of the goods ordered for which the substitution was made.  This was palming off, thinly disguised.

*Singer Mfg. Co. v. Golden*, 171 F.2d 266, 268 (7th Cir. 1948).

*Third*, SHARx, through its partners, ultimately delivers to patients boxes of non-genuine Canadian Xolair medicine falsely identified on a sticker as "Xolair Pre-Filled Syringe."  ECF No. 1, PageID.31, 44, ¶¶ 95, 147.  As discussed below, it is well-established that actionable trademark use extends to the use of a mark on non-genuine foreign products and, under theories of secondary liability, to the use of a mark by a partner.  *See infra* §§ I.C, II.

The cases concerning trademark use that SHARx cites (without explanations) have no bearing here.  Whereas SHARx is using the XOLAIR Marks to represent that it will supply genuine XOLAIR-branded products made by Plaintiffs, the defendants in SHARx's cited cases were not using terms for source-identifying reasons.  In *Hensley*, the defendant did not reference any HENSLEY-branded product at all; it merely stated that its product was designed by the individual named Jim Hensley.  579 F.3d at 610.  In *Kassa v. Detroit Metro Convention & Visitors Bureau*, the defendant did not use the phrase "Welcome to the D" to identify the plaintiff's clothing or talk-show services; it used the phrase on unrelated banners "as [a] greeting to those arriving in the City of Detroit."  150 F. Supp. 3d 831, 838 (E.D. Mich. 2015).  In *Dow Corning Corp. v. Jie Xiao*, the

11

defendant did not use the DOW CORNING marks to identify its own products or suggest any connection with the plaintiff; to the contrary, it differentiated itself from the plaintiff by indicating that its engineer had previously worked for the plaintiff but had now developed superior products.  No. 11-10008-BC, 2011 WL 2015517, at *9, *12 (E.D. Mich. May 20, 2011).[8]

### B.     The Complaint Plausibly Alleges Not Only a Likelihood of Confusion but Also Actual Consumer Confusion.

"The touchstone of liability [for trademark infringement] is whether the defendant's use of the disputed mark is *likely to* cause confusion among consumers regarding the origin of the goods offered by the parties."  *Bliss Collection, LLC v. Latham Cos., LLC*, 82 F.4th 499, 508 (6th Cir. 2023) (emphasis added).  The Lanham Act has been interpreted broadly to protect against a wide range of confusion, including not only confusion as to the source of a particular product, but also confusion as to whether the "products or services offered by the parties are affiliated in some way."  *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630 (6th Cir. 2002); *see McDonald's Corp. v. Shop at Home, Inc.*, 82 F. Supp. 2d 801, 807 (M.D. Tenn. 2000) ("The owner of the trademark may assert that a potential

---

[8] SHARx's citation to the out-of-circuit *Survitec Survival Prods. v. Fire Prot. Serv.* is unrelated to the issue of trademark use altogether.  No. H-21-312, 2025 U.S. Dist. LEXIS 192805, at *35–41 (S.D. Tex. Sep. 30, 2025).  Instead, it dealt with a fact-bound assessment at summary judgment as to whether a particular display of a mark was likely to cause confusion.  *Id.* at *2, *36–37.

12

tortfeasor has created the likelihood of confusion by leading consumers to believe that they are authorized distributors of a trademarked product when they are not.").

To determine whether there is a likelihood of confusion, courts in the Sixth Circuit consider eight factors:

> (1) the strength of the plaintiff's mark, (2) the relatedness of the goods or services offered by the plaintiff and the defendant, (3) the similarity of the marks, (4) any evidence of actual confusion, (5) the marketing channels used by the parties, (6) the probable degree of purchaser care and sophistication, (7) the defendant's intent in selecting its mark, and (8) the likelihood of either party expanding its product line using the marks.

*Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 534 (6th Cir. 2014). These factors serve not as a checklist, but as a flexible guide. *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991).

Here, the Complaint alleges facts weighing each factor in favor of a likelihood of confusion, thus amply pleading a plausible claim for trademark infringement. *See* ECF No. 1, PageID.8–12, 29–31, 34–35, 37–42, 45, ¶¶ 32–41 (XOLAIR Marks are strong), ¶¶ 36, 125–26, 128–30, 137 (parties' offerings are closely related), ¶¶ 32, 87, 128, 138, 143 (SHARx uses the exact XOLAIR Marks), ¶¶ 85–94 (instances of actual confusion), ¶¶ 38, 40, 124–26, 137 (parties use similar marketing channels), ¶¶ 41, 109, 151, 153 (consumer purchases are subject to mistakes), ¶¶ 108, 118–21, 128, 138, 143 (SHARx continues to use the exact

13

XOLAIR Marks despite knowingly delivering a different product), and ¶¶ 36, 125–26, 128–30, 137 (the parties' offerings are already closely related).

Rather than address these issues head on, SHARx contorts the relevant analysis by focusing only on actual confusion. *See* ECF No. 29, PageID.231–32. Although allegations of actual confusion are actually pled in the Complaint, "evidence of actual confusion is not required to properly plead a claim for trademark infringement." *Bliss Collection, LLC*, 82 F.4th at 512. "Due to the difficulty of securing evidence of actual confusion, a lack of such evidence is rarely significant[.]" *Daddy's Junky Music Stores, Inc. v. Big Daddy's Fam. Music Ctr.*, 109 F.3d 275, 284 (6th Cir. 1997). Thus, where, as here, the Complaint does allege evidence of actual confusion, *see* ECF No. 1, PageID.3, 29–31, ¶¶ 9, 85–94, this weighs heavily in favor of a likelihood of confusion and there can be no question that the Complaint plausibly alleges trademark infringement. *See Innovation Ventures*, 763 F.3d at 536 (observing that "[e]vidence of actual confusion is undoubtedly the best evidence of likelihood of confusion" and that even "a single instance of actual confusion can, in some cases, increase the likelihood of confusion") (internal punctuation omitted); *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997) ("'Indeed, it is difficult to conceive of a situation where a showing of substantial actual confusion would not result in a legal conclusion of likelihood of confusion.'") (quotation omitted).

14

SHARx's attempt to discount the examples of confused individuals alleged in the Complaint is similarly misguided. *See* ECF No. 29, PageID.232 n.3. "There is no requirement that evidence of actual confusion, to be relevant, 'must be confusion at the point of sale—purchaser confusion.'" *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1119 (6th Cir. 1996) (holding that "[t]he district court was mistaken" in opining that "[o]nly confusion among consumers that actually use the parties' services is relevant").

In *Champions Golf Club*, the Sixth Circuit held that the district court had erred by failing to consider "four incidents of actual confusion [that] did not relate to direct consumers." *Id.* at 1120. Rather, the confusion among golf product suppliers and a golf club starter was probative because "in all four instances, the confused individuals were knowledgeable about golf clubs, and had an incentive to accurately identify the club in question, but nonetheless were unclear about which club was which." *Id.*

The facts here are closely aligned. As meticulously documented in the Complaint, the confused individuals were medical professionals knowledgeable about the U.S. Xolair® medicine and strongly incentivized to identify the correct products to ensure safe administration to patients. ECF No. 1, PageID.29–31, ¶¶ 85–94. That such individuals were nevertheless unsure about the legitimacy of the

15

products procured and delivered by SHARx is thus highly probative of a likelihood of confusion and sufficient to plausibly allege trademark infringement.

### C.     SHARx's Liability Includes Contributory Infringement.

Contributory liability[9] may be imposed "on those who facilitate infringement," such as by "intentionally induc[ing] another to infringe a trademark."  *Coach*, 717 F.3d at 503 (quoting *Inwood Lab'ys, Inc. v. Ives Lab'ys, Inc.*, 456 U.S. 844, 854 (1982)).

SHARx has done exactly that.  As detailed in the Complaint, SHARx is not only fully aware of the scheme to substitute non-genuine foreign medicine in the place of patients' prescribed U.S. Xolair® medicine, it has, as the scheme's architect, induced its partners to deliver those misidentified products.  ECF No. 1, PageID.34–43, ¶¶ 109–146.  SHARx is deeply involved throughout the process:

- SHARx markets its scheme to customers as a low-cost alternative for obtaining the same medicines to which they are accustomed.  *Id.*, PageID.37–41, ¶¶ 124, 128, 130, 133, 137–41.

- SHARx assures physicians that patients will receive authentic medicine via a deceptive "Prescription Request From SHARx Mail Order Program" form that instructs physicians to pass along the "Xolair" prescription to SHARx's partner pharmacy located in the United States.  *Id.*, PageID.29, 42, ¶¶ 87, 142–43.

- SHARx's partners ultimately deliver non-authentic, materially different foreign Xolair® medicine.  *Id.*, PageID.30, 39, 43–45, ¶¶ 89, 132, 144–49.

---

[9] SHARx ignores inducement liability, focusing instead only on vicarious liability. But these are *each* valid theories of secondary liability.  *Ohio State Univ. v. Redbubble, Inc.*, 989 F.3d 435, 442 n.1 (6th Cir. 2021).

- When contacted after delivery, SHARx representatives reiterate the claim that SHARx has sourced the prescribed medicine. *Id.*, PageID.33, ¶ 105.

*See Procter & Gamble Co. v. Team Techs., Inc.*, No. 1:12-CV-552, 2014 WL 12531486, at *4 (S.D. Ohio July 3, 2014) (observing that "[i]ndirect infringement claims can be proven by circumstantial evidence" such as instructing others to engage in infringing conduct).

Contrary to SHARx's characterization, contributory liability for intentionally inducing infringement is not limited to "manufacturers or distributors." ECF No. 29, PageID.233. Rather, "following *Inwood*, circuit courts have applied its reasoning beyond manufacturers and distributors to cover a wide variety of other infringement contexts." *Roadget Bus. PTE. Ltd. v. PDD Holdings Inc.*, No. CV 24-2402 (TJK), 2026 WL 44864, at *20 (D.D.C. Jan. 7, 2026) (internal punctuation omitted) (collecting cases). SHARx's active role in encouraging and furthering the infringement through its unlawful importation scheme therefore lands it squarely in the realm of contributory liability. *See id.*; *see also Inwood*, 456 U.S. at 854.

## II. SHARx's First-Sale Defense Is Premature and Meritless.

In spilling a great deal of ink on irrelevant aspects of counterfeiting and the general contours of the first-sale doctrine, *see* Section II.A., SHARx ignores that the Complaint is instead addressed to a situation squarely governed by black-letter law: materially different foreign goods are not genuine and thus infringing. *See* Gray Market Goods—Introduction, 4 McCarthy § 29:46 ("[G]ray market goods are

17

not 'genuine' if they are materially different from the product authorized by the trademark owner.").

As the Sixth Circuit has explained, the first-sale doctrine simply does not apply "when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner." *Brilliance Audio, Inc. v. Haights Cross Commc'ns, Inc.*, 474 F.3d 365, 370 (6th Cir. 2007). This is because the infringing products in those instances are not "genuine goods." *FURminator, Inc. v. Kirk Weaver Enters., Inc.*, 545 F. Supp. 2d 685, 690 (N.D. Ohio 2008) ("Courts in the Sixth Circuit are in agreement with the Second Circuit" that "[i]f the trademark owner did not approve the original sale, the goods cannot be considered genuine as a matter of law and infringement is established.").

Indeed, this material-difference doctrine is well-settled, with nearly every appellate court having adopted the doctrine—and none having rejected it.[10]

Though SHARx may wish it otherwise, this is not an unusual case.

---

[10] *See, e.g.*, *Societe Des Produits Nestle v. Casa Helvetia, Inc.*, 982 F.2d 633 (1st Cir. 1992); *Original Appalachian Artworks, Inc. v. Granada Electronics, Inc.*, 816 F.2d 68, 73 (2d Cir. 1987); *Iberia Foods Corp. v. Romeo, Jr.*, 150 F.3d 298 (3d Cir. 1998); *Martin's Herend Imps., Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296 (5th Cir. 1997); *R.J. Reynolds Tobacco Co. v. Cigarettes Cheaper!*, 462 F.3d 690 (7th Cir. 2006); *Hokto Kinoko Co. v. Concord Farms, Inc.*, 738 F.3d 1085 (9th Cir. 2013); *Beltronics USA, Inc. v. Midwest Inventory Dist., LLC*, 562 F.3d 1067 (10th Cir. 2009); *Davidoff & Cie, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297 (11th Cir. 2001); *Gamut Trading Co. v. ITC*, 200 F.3d 775 (Fed. Cir. 1999).

18

**A.    The Material Differences Alleged in the Complaint Cannot Be Challenged on a Motion to Dismiss.**

The Sixth Circuit has made clear that whether there are sufficient differences between two products is a fundamentally inappropriate consideration on a motion to dismiss. *Brilliance*, 474 F.3d at 370. This is because the "question of materiality is a fact-based inquiry requiring an examination of the products and markets at issue," and the material differences bar is kept quite low "to include even subtle differences between products." *Id.* "Thus, an allegation of a material difference cannot properly be dismissed on 12(b)(6) grounds." *Id.* (reversing district court's dismissal premised on insufficient differences).

Ignoring the Sixth Circuit's clear precedent, SHARx instead improperly relies on cases that use contradictory approaches from other circuits or that otherwise have no bearing on a motion to dismiss based on material differences. *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011) (not addressed to any intellectual property issues, much less material differences in a trademark claim); *Anago Franchising, Inc. v. IMTN, Inc.*, 477 F. App'x 383 (7th Cir. 2012) (out-of-circuit case that does not concern material differences); *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297 (11th Cir. 2001) (out-of-circuit case dealing with preliminary injunction evidence); *Maui Jim, Inc. v. SmartBuy Guru Enters.*, 459 F. Supp. 3d 1058 (N.D. Ill. 2020) (out-of-circuit case dealing with summary judgment evidence); *Alcon Vision, LLC v. Lens.com, Inc.*, No. 18-CV-407

19

(NG), 2020 U.S. Dist. LEXIS 186403 (E.D.N.Y. Feb. 28, 2020) (out-of-circuit case dealing with preliminary injunction evidence); *Wellnext LLC v. OVM LLC*, No. 17-CV-62107, 2017 U.S. Dist. LEXIS 218128 (S.D. Fla. Feb. 15, 2017) (out-of-circuit case confirming that quality control differences may be material); *Food Scis. Corp. v. Nagler*, No. 09-1798 (JBS), 2010 U.S. Dist. LEXIS 27236 (D.N.J. Mar. 22, 2010) (out-of-circuit case addressed to run-of-the-mill trademark infringement "entirely distinct from the kind of claim in which 'material difference' is at issue"). These cases are irrelevant.

**B.      The Complaint Identifies Extensive Material Differences.**

Even if the Court were to scrutinize the specific material differences alleged in the Complaint, it would find ample facts to clear the low materiality threshold.

"Because a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle differences between products." *Brilliance*, 474 F.3d at 370. "These differences may not be blatant enough to make it obvious to the average consumer that the origin of the product differs from his or her expectations." *Abercrombie & Fitch v. Fashion Shops of Ky., Inc.*, 363 F. Supp. 2d 952, 966 (S.D. Ohio 2005). But subtle differences cause confusion and deception precisely because consumers who receive the similar but non-genuine product "'will assume it to be the same as the normal domestic product and be disappointed.'" 4 McCarthy § 29:51.75

20

(quotation omitted).  The material difference rule therefore steps in to "protect[] the goodwill of the domestic importer and protect[] consumers from confusion as to the nature and quality of the imported products."  *Id.*

The Complaint details at least ten differences between the U.S. Xolair® medicine and the Canadian Xolair® medicine, ECF No. 1, PageID.13–27, ¶¶ 46–79, which are not only likely to cause confusion, but have, in fact, already caused confusion as to the products' quality and authenticity, *id.*, PageID.29–34, ¶¶ 85–106.  These differences strike at the heart of patient safety, as they reflect deviation from Plaintiffs' and FDA's stringent production and labeling requirements designed to ensure that the medicines are properly created, distributed, and used.  ECF No. 1, PageID.14, 19–20, ¶¶ 49–50, 70, 74.  It is no small matter, for example, that the product procured by SHARx omits a Medication Guide, a document that FDA carefully designs to ensure patient safety for medicines with unique risks.  *Id.*, PageID.19–20, ¶¶ 70, 74; FDA, Patient Labeling Resources, https://www.fda.gov/drugs/fdas-labeling-resources-human-prescription-drugs/patient-labeling-resources.

Courts routinely uphold the various categories of differences identified in the Complaint as material to consumers, including **(a)** quality control differences, *Gilead Scis., Inc. v. Meritain Health, Inc.*, 2025 WL 1745669, at *13 (D. Md. 2025) (granting preliminary injunction where foreign anti-viral drug was not

21

subject to plaintiff's U.S. quality controls); *Abercrombie*, 363 F. Supp. 2d at 966 (granting preliminary injunction where lack of quality control over clothing could result in differences that "may not be obvious to the average consumer"); **(b)** language differences, *Helene Curtis v. Nat'l Wholesale Liquidators, Inc.*, 890 F. Supp. 152, 155 (E.D.N.Y. 1995) (granting preliminary injunction where Canadian hair care products were labelled in French as well as in English); **(c)** measurement differences, *id.* (granting preliminary injunction where Canadian hair care products listed quantity in metric); **(d)** instruction differences, *Abbott Labs. v. Adelphia Supply USA*, Nos. 15-CV-5826 (CBA) (LB), 17-CV-6002 (CBA) (LB), 2019 WL 5696148, at *6 (E.D.N.Y. 2019) (determining on summary judgment that differences in medical device use instructions were material); and **(e)** health labeling differences, *Zip Int'l Group LLC v. Zenith Foods LLC*, 20-CV-3356 (ARR) (PK), 2021 WL 5399452, at *4 (E.D.N.Y. 2021) (denying motion to dismiss where foreign product did not comply with FDA-labeling requirements); *Nestle USA, Inc. v. Best Foods LLC*, 562 F. Supp. 3d 626 (C.D. Cal. 2021) (same).  Thus, there can be no dispute at the pleadings stage that Plaintiffs have alleged actionable material differences.  *Brilliance*, 474 F.3d at 370.

> **C.    SHARx's Remaining Material Difference Arguments Are Baseless.**

Again, the Court need not consider SHARx's remaining arguments, which are improper on a motion to dismiss.  *Id.*  But each fails for additional reasons.

*First*, SHARx cannot counter the facts pleaded in the Complaint by injecting its own version of the facts. *Solo*, 819 F.3d at 795; *Handy-Clay*, 695 F.3d at 538; *Realtek Indus., Inc.*, 939 F. Supp. at 582. SHARx cannot, for example, contradict the pleaded fact that the U.S. Xolair® medicine is approved for an additional indication (food allergy), ECF No. 1, PageID.19–21, ¶¶ 70–71, by asserting summarily that the U.S. and Canadian medicines are "for the same use," ECF No. 29, PageID.237. Nor can it contest the pleaded facts regarding differing product labeling by asserting—without any sources—that consumers are "accustomed to receiving" certain types of product information or that SHARx's partner's temperature tag "does its job." *Id.*, PageID.238, 240. These are matters to be addressed with evidence at a future stage of the proceedings.

*Second*, SHARx cannot rely on its argument—again premised on putative facts drawn from beyond the Complaint—that the Canadian Xolair® medicine may apply "more stringent" standards than the U.S. Xolair® medicine. The material difference doctrine does not require that the challenged products are of *inferior* quality, just that they are materially different. *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA Co.*, 112 F.3d 1296, 1302 (5th Cir. 1997) ("[T]he plaintiff need not prove that the defendant's imports are of inferior quality to establish trademark infringement, only that they are materially different.").

23

*Third*, SHARx cannot rely on its unevidenced assertion that the particular shipments identified in the Complaint "were handled in accordance with Plaintiffs' own standards."  ECF No. 29, PageID.238.  When considering the issue of quality control, "courts do not require trademark owners to show that the actual quality of the inspected goods is measurably higher than that of the uninspected goods." *Iberia Foods Corp. v. Romeo*, 150 F.3d 298, 304 (3d Cir. 1998).

The issue is not whether SHARx could implement reasonable quality control efforts.  Rather, Plaintiffs have the "right to control" the quality of goods bearing its marks using its own preferred methods, even if other equally effective methods existed.  *Shell Oil Co. v. Com. Petroleum, Inc.*, 928 F.2d 104, 107 (4th Cir. 1991); *El Greco Leather Prods. Co. v. Shoe World, Inc.*, 806 F.2d 392, 395 (2d Cir. 1986); 1 McCarthy § 3:11.  As a matter of law, SHARx is not entitled to substitute its own quality-control procedures, however allegedly robust, for Plaintiffs'.

## III.   The Complaint Identifies Benefits That Unjustly Enrich SHARx.

Michigan law provides broadly that "the doctrine of unjust enrichment exists so that a 'person shall not be allowed to profit or enrich himself inequitably at another's expense.'"  *Sports Auth., Inc. v. Abercrombie & Fitch, Inc.*, 965 F. Supp. 925, 942 (E.D. Mich. 1997) (quotation omitted).  Given this breadth, courts in this District have consistently rejected SHARx's undeveloped argument that the unauthorized use of a trademark is not an actionable benefit.  *See, e.g.*, *id.* (unjust

24

enrichment claim sufficiently pled where defendant benefited from use of plaintiff's trademark symbols); *Hoenig Devs., Inc. v. Dial Indus., Inc.*, 213 F. Supp. 3d 895, 908 (E.D. Mich. 2016) (rejecting argument that unauthorized use of a mark "ha[s] not provided Defendant anything of value" given resulting benefit of sales).

Equally here, the Complaint plausibly alleges a benefit in SHARx's unlicensed use of Plaintiffs' marks to market and sell its offerings. *See, e.g.*, ECF No. 1, PageID.5, 9, 16, 37–40, 52, ¶¶ 16, 18, 33, 62, 123–33, 136, 195–97.

## IV.   If the Court Grants the Motion, It Should Also Grant Leave to Amend.

If the Court grants SHARx's Motion in any respect, Plaintiffs should be granted leave to amend. *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment.").

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny SHARx's Motion.

Dated: April 17, 2026

Respectfully submitted,

Miller, Canfield, Paddock and Stone, PLC

By: */s/ Thomas W. Cranmer*
Thomas W. Cranmer (P25252)
Matthew P. Allen (P57914)
840 W. Long Lake Rd., Ste. 150
Troy, MI 48098
(248) 267-3290
cranmer@millercanfield.com
allen@millercanfield.com
***Attorneys for Plaintiffs***

25

## CERTIFICATE OF SERVICE

Thomas W. Cranmer of Miller, Canfield, Paddock and Stone, P.L.C. states that on April 17, 2026, he served a copy of the foregoing document using the ECF system which will send notification of such filing to all counsel of record.

/s/ Thomas W. Cranmer
Thomas W. Cranmer (P25252)